Santiago ALFARO and Araraquara Cit-
rus, Inc., on behalf of themselves and
all others similarly situated

v.

E.F. HUTTON & COMPANY, INC.

Civ. A. No. 84–3276.

United States District Court,
E.D. Pennsylvania.

April 1, 1985.

Richard D. Greenfield, Carole A. Broderick, David B. Zlotnick, Greenfield, Chimicles & Lewis, Haverford, Pa., for plaintiffs.

William G. Campbell, Lindsey Miller-Lehman, F. Joseph Warin, Kutak, Rock & Campbell, Washington, D.C., Leonard Barrack, Jerry Rodos, Barrack, Rodos & Bacine, Philadelphia, Pa., for defendant.

## OPINION

LOUIS H. POLLAK, District Judge.

This action was initiated in July 1984 by Santiago Alfaro and Araraquara Citrus, Inc., a corporation wholly owned by Mr. Alfaro, on behalf of themselves and all other similarly situated individuals. The complaint alleges that the named plaintiffs and other individuals purchased limited partnership interests in Energy Resources 1981–A Ltd. ("Energy Resources") after July 8, 1981, as a result of the promotion of these interests by defendant E.F. Hutton & Co. ("Hutton"). Plaintiffs claim that defendant Hutton made numerous misrepresentations regarding the nature and riskiness of this investment which caused them to enter into the deal. They assert that Hutton knew that these representations were false at the time they were made or that defendant acted with reckless disregard as to the truth of these representations. The complaint presents six counts including claims under (1) section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10(b)–5; (2) section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l; (3) the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1964(c); and (4) Pennsylvania common law for (a) fraud; (b) breach of fiduciary duty; and (c) negligence.

In late August 1984, plaintiffs filed a motion for class certification. Defendant did not respond directly to that motion but, on September 14, 1984, filed a motion to dismiss the complaint pursuant to Rule 12(b)(6). Plaintiffs have responded to that motion and defendant has filed a reply to plaintiffs' response.

The motion raises a number of challenges to each count of the complaint. Although there is some overlap in the arguments raised in opposition to different counts, the challenges to each count are sufficiently distinct to allow me to address the objections in the sequence in which the counts are presented in the complaint.

### 1) *Section 10(b) and Rule 10(b)–5 claim*

Count One of the complaint charges Hutton with violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10(b)–5 promulgated thereunder. This securities fraud claim is challenged in the present motion on three grounds: (1) the opinions and predictions which are alleged to have been misrepresentations cannot form a basis for liability; (2) the statute of limitations had expired on this claim prior to the filing of the complaint; and (3) fraud is not pleaded with the necessary specificity. I will address each of these contentions in this order.

### a) *Opinions and predictions as misrepresentations*

■ Count One alleges that defendant misrepresented to plaintiffs that the proposed investment in Energy Resources (1) was a low risk investment; (ii) would yield a three-to-one return on fifty percent of the proceeds which would be invested in low risk development wells; (iii) would call for fifty percent of the proceeds to be invested in controlled exploratory drilling; (iv) would involve a large number of wells to minimize the risk; and (v) was likely to produce a six-to-one return on investment over time. Count One also charges that

defendant stated that there was minimal risk that the letters of credit to be provided by plaintiffs would be called. Hutton contends that this type of misrepresentation may not form the basis for a securities fraud claim. Hutton cites numerous cases for the proposition that expressions of opinion and predictions are not actionable as fraud. Defendant's brief at 11. However, defendant recognizes that under certain "limited circumstances" a fraud claim may be asserted on the basis of misrepresentations of opinion. Opinions or predictions not made in good faith or made with the knowledge that they are not based upon a sound, factual or historical basis are actionable under section 10(b) and rule 10(b)–5. *See, e.g., Marx v. Computer Sciences Corporation*, 507 F.2d 485 (9th Cir.1974); *Eichen v. E.F. Hutton & Co., Inc.*, 402 F.Supp. 823, 829 (S.D.Cal.1975); *Schuller v. Slick Corporation*, [1974–1975 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 95,065 (S.D. N.Y.1975); *Nicewarner v. Bleavins*, 244 F.Supp. 261, 264 (D.Colo.1965). Hutton contends that the complaint fails to allege the necessary bad faith or scienter to support liability for these allegedly faulty predictions and opinions and therefore Count One must be dismissed.

Plaintiffs respond that the complaint more than adequately alleges a claim for securities fraud under section 10(b) and rule 10(b)–5 despite the fact that the alleged misrepresentations were opinions or predictions. Plaintiffs assert that the complaint properly alleges that when these predictions and opinions were made Hutton was aware that it did not have a factual basis for such representations. Plaintiffs also note that defendant, in its brief, suggests that it should be obvious that opinions and predictions of the nature of those allegedly made by Hutton could never be made with assurance. Plaintiffs contend that this admission by defendant shows that defendant should be liable for its statements because defendant knew that potential investors were relying upon representations which could not be made with assurance.

The motion to dismiss presents the limited question whether, if the allegations in the complaint were proved, they would suffice to warrant a finding of liability. Defendant correctly notes that the types of misrepresentations alleged in the complaint are essentially predictions of likely return on the proposed investment and expectations as to how the money invested would be used and opinions as to the riskiness of the venture. However, such statements may be actionable under section 10(b) and rule 10(b)-5 if, when the statements were made, the defendant did not have a good faith belief that it had the information on which it could predicate the opinion or prediction expressed. *McLean v. Alexander,* 599 F.2d 1190, 1198 (3d Cir.1979). *E.g., Beissinger v. Rockwood Computer Corp.,* 529 F.Supp. 770, 780–81 (E.D.Pa.1981) (the defendant must have a sound, factual or historical basis for the opinion or prediction). Therefore, the question to be determined at this time is whether plaintiffs have alleged the necessary scienter on the part of defendant with regard to these alleged misrepresentations. I conclude that they have.

Paragraph 26 of the complaint states: Defendant acted with knowledge of the falsity of its statements and the materiality of its omissions or with reckless disregard for the truth or falsity thereof.

Although this language could have been more carefully chosen to correspond to the type of misrepresentation alleged (i.e., it would have been more appropriate to allege that defendant knew that it lacked information on which to base these opinions and predictions or that the information which defendant possessed did not support these statements), under the liberal pleading standard of the Federal Rules of Civil Procedure, this statement sufficiently alleges that defendant knew that it lacked support for these predictions and opinions or acted in reckless disregard of this fact.

The Federal Rules of Civil Procedure require that fraud and mistake be pleaded with specificity. Rule 9(b). However, intent and knowledge may be averred generally. Therefore, the very general nature of the allegation of scienter in the present complaint does not warrant dismissal or amendment of the complaint. *See Denny v. Carey,* 72 F.R.D. 574, 580 (E.D.Pa.1976).[1]

### b) *Statute of limitations*

■ In the absence of an express statute of limitations in the federal statute upon which the securities fraud claim is based, it is necessary to turn to the law of the forum state for the appropriate limitations period. *Biggans v. Bache Halsey Stuart Shields,* 638 F.2d 605 (3d Cir.1980). In the present case there are two statutes of limitations from which to choose. One potentially applicable statute of limitations is provided by 42 Pa.Cons.Stat.Ann. § 5524(7). That statute applies to common law fraud claims brought in Pennsylvania courts and requires that all such claims be brought within two years. Alternative limitations periods are established in the Pennsylvania Securities Act, 70 Pa.Stat.Ann. § 1–504(a). That Act states that an action under that Act must be brought within three years "after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire."

The question to be resolved in choosing the appropriate statute of limitations is what limitations period would apply to a state law claim which parallels the federal claim asserted. In general under Pennsylvania law, when the suit involves a claim against a broker rather than a seller of

1. Defendant's assertion that opinions and predictions may not form a basis for liability under section 10(b) may, alternatively, be based upon the assumption that plaintiffs could not reasonably rely upon such representations even if they were made with the necessary scienter on the part of defendant. However, because this question arises on a motion to dismiss where I must view the pleadings most favorably for the plaintiffs, I must assume that plaintiffs can prove that they relied upon these statements as they have alleged.

securities, the courts of this Circuit apply the two-year common law fraud limitations period. *E.g., Sharp v. Coopers & Lybrand,* 649 F.2d 175, 191–92 (3d Cir.1981); *Biggans v. Bache Halsey Stuart Shields,* 638 F.2d 605 (3d Cir.1980); *Fickinger v. C.I. Planning Corp.,* 556 F.Supp. 434 (E.D. Pa.1982). This result stems from the fact that the Pennsylvania Securities Act only allows recovery against "sellers" of securities so that claims against brokers who are not in privity with the plaintiffs must be brought under a common law fraud theory in Pennsylvania. However, when the defendant sold securities to the plaintiff and was in privity with the plaintiff, the plaintiff would have a claim under the Pennsylvania Securities Act. Thus, to determine which state law cause of action is most similar to the present claim, I must consider whether the present section 10(b) claim alleges that Hutton acted as a "seller" of securities or merely a broker. If Hutton's role was one which placed it in privity with plaintiffs, the section 10(b) claim would parallel a claim under the Pennsylvania Securities Act and its statute of limitations would apply. If, on the other hand, Hutton was not in privity with plaintiffs, the two-year limitations period for common law fraud would apply.

The current complaint alleges that Hutton acted as a "sales agent" to sell interests in Energy Resources, a Texas limited partnership. It also alleges that plaintiffs "purchased" and defendant "sold" the limited partnership interests in Energy Resources. Therefore, there is some suggestion that defendant was acting outside of the typical realm of activities of a broker and may have been in the position of the "seller" of the partnership interests in question.

■ Under the unique factual scenario alleged, I cannot determine from the face of the complaint which statute of limitations should apply. Therefore, faced with a motion to dismiss, I must assume that either limitations period may apply and allow the claim to stand if it would not be time-barred under either one of them.

■ "Although state law provides the limitations period, federal law determines when the period commences to run." *Biggans v. Bache Halsey Stuart Shields,* 638 F.2d 605, 607 n. 3 (3d Cir.1980). Thus, I must turn to federal principles to determine the date which starts the running of the appropriate limitations period—whether that period be one year, two years, or three years. "Under the federal equitable tolling doctrine the statute does not begin to run until the plaintiff knew or exercising reasonable diligence should have known of the alleged fraud." *Id.* at 608 n. 3. Furthermore, the "active concealment of fraudulent conduct tolls the statute of limitations in favor of the defrauded party until such time as he actually knew of the fraudulent conduct of the opposing party". *Engl v. Berg,* 511 F.Supp. 1146, 1151 (E.D.Pa.1981).

In the present case Hutton argues that the action is time-barred because plaintiffs have failed to plead with specificity why they were unable to discover the fraud more than one year prior to the filing of the present action. *E.g., Hill v. Equitable Trust Co.,* 562 F.Supp. 1324, 1340 (D.Del. 1983). Plaintiffs respond that they need not plead the details of their efforts to discover the fraud with specificity and that, even if such specific pleading is required, they have pleaded fraudulent concealment in a manner sufficient to withstand the current challenge.

With regard to this issue, paragraph 22 of the complaint states:

> By reason of defendant's concealment of their scheme, plaintiffs and the other investors had no reason to suspect wrongdoing until January 1984 at the earliest, and had no reason to suspect that a fraud had been committed until the completion of the investigation conducted by plaintiffs' counsel in June 1984.

Therefore, the complaint clearly alleges when the fraud was discovered by plaintiffs and why plaintiffs did not discover the fraud earlier. The reason presented for plaintiffs' failure to discover the fraud until 1984 was the concealment of the fraud by defendant. The activities which consti-

tuted concealment are catalogued in paragraphs 19 to 21 of the complaint.

In these circumstances, I need not address the broad question raised by defendant—whether, in all securities fraud complaints, the plaintiff must allege in detail when he learned of the fraudulent conduct, why discovery was not made earlier, and what diligent efforts were made to unearth the fraud. *E.g., Hill v. Equitable Trust Co.,* 562 F.Supp. 1324, 1340 (D.Del.1983); *Brick v. Dominion Mortgage & Realty Trust,* 442 F.Supp. 283, 292 (W.D.N.Y. 1977). The only question before me is the more limited issue whether a plaintiff who asserts that discovery of the fraud was delayed by defendant's concealment must allege with specificity the circumstances of the alleged concealment efforts by defendant.

It is well established that fraudulent concealment must be pleaded with specificity. *E.g., Armstrong v. McAlpin,* 699 F.2d 79 (2d Cir.1983); *Herm v. Stafford,* 663 F.2d 669 (6th Cir.1981); *Rich-Taubman Associates v. Stamford Restaurant Operating Co.,* 587 F.Supp. 875 (S.D. N.Y.1984); *Kilmartin v. H.C. Wainwright & Co.,* 580 F.Supp. 604 (D.Mass.1984); *Butler v. Rye,* 544 F.Supp. 143 (D.Mo.1982). Plaintiffs have suggested no reason to depart from this general principle in the present case where the allegations regarding discovery of the fraud depend upon allegations of concealment of the fraud by defendant. Therefore, I conclude that the same degree of pleading specificity is required when the claim of inability to discover the fraud rests upon an assertion of concealment as when fraud is alleged in any other pleading.

To determine whether plaintiffs' allegations of fraudulent concealment are sufficient, it is necessary to consider the general standards which apply to pleadings of fraud. Because these issues are also raised by defendant's overall challenge to the sufficiency of the substantive allegations of securities fraud under section 10(b) and rule 10(b)–5, I will address them together.

c) *Specificity of fraud pleading*

Rule 9(b) of the Federal Rules of Civil Procedure states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Defendant's motion attacks the sufficiency of both the allegations of fraudulent concealment and of securities fraud. Defendant contends that the complaint fails to identify the nature of the fraud, when the allegedly fraudulent misrepresentations were made, and the circumstances under which they were made. In particular, defendant asserts that plaintiffs have failed to distinguish the conduct with which defendant is to be charged and the conduct of nondefendants such as Energy Resources. Plaintiff responds to these contentions by asserting that defendant is relying upon pleading standards not applicable under the law of this Circuit and that the complaint is more than sufficient under Third Circuit standards.

The Court of Appeals for the Third Circuit, speaking through Judge Hunter, recently addressed the scope of the specificity requirement of Rule 9(b) in *Seville Industrial Machinery v. Southmost Machinery,* 742 F.2d 786 (3d Cir.1984):

We approach this question mindful of our recent admonition that in applying Rule 9(b), "focusing exclusively on its 'particularly' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3d Cir.1983) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)). We conclude that the district court subjected Seville's allegations of fraud to too strict a scrutiny. Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of

the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. In the present case, Seville adequately satisfied the requirements of Rule 9(b) by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud. Moreover, Seville divided this list into five "exhibits" and identified which pieces of equipment were the subject of which alleged fraudulent transaction. The complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation. In sum, we conclude that Seville has alleged the fraud-based offenses with sufficient particularity to withstand a motion to dismiss under Rule 9(b).

■ Thus, as a general matter, Rule 9(b) should not be applied so strictly as to deprive a legitimate plaintiff of his opportunity to develop his case through discovery while a "sophisticated defrauder [ ] ... successfully conceal[s] the details of [his] fraud," *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983). Furthermore, "[w]hen the transactions are numerous and take place over an extended period of time, less specificity is required." *In re Catanella and E.F. Hutton and Co. Securities Litigation*, 583 F.Supp. 1388, 1398 (E.D.Pa.1984). More-

over, less specificity is required when the complaint presents the claims of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings. *E.g.*, *In re Ceasars Palace Securities Litigation*, 360 F.Supp. 366, 388 (S.D.N.Y. 1973); *Contract Buyers League v. F & F Investment*, 300 F.Supp. 210 (N.D.Ill.1969).

Upon consideration of the present complaint in light of these general precepts, I conclude that plaintiffs' allegations of securities fraud are, for the most part, adequate. With regard to the allegations under section 10(b) and rule 10(b)–5, plaintiffs have alleged six different types of misrepresentations which were made to them by defendant.[2] Although these are not presented verbatim as they were stated to the plaintiffs, these allegations are more than sufficient to put Hutton on notice of the nature of the misrepresentations which it is alleged to have made. Because these misrepresentations were allegedly made to approximately eighty potential plaintiffs in different parts of the country and were not made in writing, it would be unduly burdensome to demand the plaintiffs state the date on which each such representation was made, the times of such representations and the specific locations involved.

■ Plaintiffs allege that these representations were made orally by brokers employed by defendant. Plaintiffs also allege that the misrepresentations were made between May 7, 1981 and the time of the purchase of the partnership interests sometime after July 8, 1981. In light of the nature of the fraud alleged (i.e., oral misrepresentations) and the nature of the present case (i.e., a proposed class action), these allegations, while not models of speci-

---

**2.** The misrepresentations allegedly made to plaintiffs were:

a) that this was a low risk investment;
b) that 50% of the proceeds of the program were going to be used for low risk development wells, that would provide a three-to-one return;
c) that the balance of the proceeds would be invested in controlled exploratory drilling;

d) that the program would not concentrate its funds in a handful of wells, but would invest broadly so as to minimize the risks;
e) that, as a result of the above, there was minimal risk that the letter of credit, which was to be provided by plaintiffs as part of the investment, would ever be called; and
f) that a six-to-one return on investment was likely over the course of time.
Complaint ¶ 17.

ficity, are sufficient to place defendant on notice of the nature of the claims asserted against it and to assure that plaintiffs' claims are not spurious.[3]

However, one portion of the securities fraud allegation is deficient and should be amended to amplify the claim asserted. That section of the complaint is found in paragraph 16, which reads as follows:

Defendant Hutton prepared a Private Placement Memorandum soliciting investments in Energy Resources on or about May 7, 1981. That memorandum was deliberately general, however, and did not provide potential investors with much of the more detailed information needed by them. Pursuant to a marketing strategy devised by defendant Hutton, such information was to be provided by individual Hutton brokers to prospective investors. All of the information imparted by the brokers, however, emanated from Hutton's central offices.

The Private Placement Memorandum referred to in that paragraph is not appended to the complaint. In addition, no further discussion is provided to explain the nature of the alleged deficiencies in that Memorandum or the nature of the information needed by investors which was purposefully not included therein. If plaintiffs seek to assert not only that defendant, acting through its brokers, made oral misrepresentations as described in paragraph 17, but also, through the omission of material from the Private Placement Memorandum, violated section 10(b) and rule 10(b)–5, plaintiffs must expand upon the allegations with regard to that Memorandum.

Furthermore, paragraph 16 states that defendant devised a marketing strategy under which information would be provided to potential investors by individual brokers. In these allegations plaintiffs assert that the alleged oral misrepresentations discussed in paragraph 17 were directed by defendant's central offices.

Plaintiffs provide no factual support for these conclusory claims of central office involvement in the alleged fraud. It is just such unsupported and conclusory claims which Rule 9(b) is designed to combat. To the extent that plaintiffs wish to assert that the alleged fraud was the result of a strategy of defendant's central office, plaintiffs must provide some factual support for those allegations.

With regard to Hutton's concern that the complaint fails to distinguish between its conduct and the conduct of nondefendants, I find that argument unpersuasive. The allegations of securities fraud in paragraphs 15 through 18 and 23 through 28 refer solely to conduct of defendant's central office and its brokers. The alleged misrepresentations were allegedly made by defendant's brokers while the defendant is alleged to have constructed the Private Placement Memorandum and the general strategy. None of these allegations suggest that nonparties were responsible for any of the alleged wrongdoing.

Unlike the bulk of the substantive securities fraud allegations, the allegations of fraudulent concealment found in paragraphs 19 through 21 of the complaint are deficient. These paragraphs state:

19. For the next several years, defendants [sic] Hutton repeatedly reassured plaintiffs and the members of the class, that, although there was not yet any cash flow to the investors, the program would be successful. Indeed, in the summer of 1982 there was an assessment made against the investors for an additional capital contribution. Hutton reassured plaintiffs and the members of the class at that time that the assessment was a return on investment to plaintiffs. A reserve report issued on or about that time also buoyed the investors' expectations of successful operations.

---

**3.** These conclusions regarding the sufficiency of the fraud allegations assume that this action will continue as a class action. Should this action not be certified to proceed in that man-ner but only as an action on behalf of the two named plaintiffs, plaintiffs will be required to amend the complaints to provide much greater factual specificity.

20. Subsequently, by letter dated July 31, 1983, a revised report of the partnerships reserves was sent to plaintiffs and the class. This report, which reflected a significant reduction in the partnership's reserves, was the first indication of any potential problems with the partnership's activities. Even subsequent to that time, however, defendant Hutton continued to reassure investors that the letters of credit would not be called and that the partnership would provide a positive return on investment, if not the six or eight-to-one return originally forecast by Hutton.

21. In January 1984, there was a further reduction in the partnership's reserves. Shortly thereafter, Hutton began to propose a restructuring of the investors' obligations under their letters of credit. Not until that time did plaintiffs or other members of the Class have reason to believe that any of Hutton's representations had been false or misleading.

22. By reason of defendant's concealment of their scheme, plaintiffs and the other investors had no reason to suspect wrongdoing until January 1984 at the earliest, and had no reason to suspect that a fraud had been committed until the completion of the investigation conducted by plaintiffs' counsel in June 1984.

These allegations are devoid of the specificity necessary in a claim of fraud. Plaintiffs do not identify the source or the manner of these alleged reassurances. For those reassurances which were made in writing, little detail is provided by which those documents can be identified and none of the documents is appended to the complaint. Furthermore, the time period during which the alleged fraudulent concealment occurred was a matter of years, not the few months over which the original misrepresentations were allegedly made. Plaintiffs fail to identify particular points during this time period when particular reassurances were provided which concealed the fraud. The general references to reassurances provided sometime near the summer of 1982 and sometime around July 31, 1983 do not correct this deficiency. Although it may not be possible to identify the time of each oral reassurance made to each class member which continued the fraud or which concealed the fraud, plaintiffs must present more narrow time frames during which each act of concealment allegedly occurred, describe the nature of the concealment, identify the form in which the alleged reassurance or other representation was made, and identify the source of the alleged reassurance. In addition, to the extent possible, plaintiffs should identify written materials which were part of the fraudulent concealment scheme and attach them to the complaint whenever possible. As with the securities fraud claims, it is not necessary for plaintiffs to catalogue the names of each broker and the precise words with which he or she reassured each investor, but plaintiffs must provide defendant with sufficient detail, (1) to allow defendant to understand and respond to the charges of fraudulent concealment and (2) to assure this court that plaintiffs' good faith submissions give some minimum ground for inferring that the fraudulent concealment claims have some factual support.

Count one of the complaint must, therefore, be dismissed for partial failure to plead the underlying claim with specificity and for failure to plead fraudulent concealment with sufficient specificity to toll the running of the statute of limitations until some time after the alleged fraud. However, in an Order accompanying this Opinion, I will fix a time for filing an amended complaint.

### 2) *Section 12(2) claim*

Count two of the complaint alleges that defendant's conduct violated section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). The second count then seeks rescission of the transaction due to the alleged violation of section 12(2). Section 12(2) reads as follows:

Any person who—

(2) offers or sells a security (whether or not exempted by the provisions of section

77c of this title, other than paragraph (2) of subsection (a) of said section), by use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

Defendant challenges this count of the complaint on the grounds that (1) the applicable statute of limitations has run and (2) plaintiffs have not alleged that the securities in question have been tendered.

(a) *Statute of limitations*

The statute of limitations governing claims under section 12(2) is found in section 77m of title 15. It states:

No action shall be maintained to enforce any liability created under section 77k or 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, .... In no event shall any such action be brought to enforce a liability created ... under section 77*l* (2) of this title more than three years after the sale.

Paragraph 18 of the complaint states that the purchases of the partnership interests took place after July 8, 1981.[4] The complaint was filed on July 6, 1984. Therefore, the complaint was filed within three years of the date of the "sale" as discussed in Section 77m. However, defendant contends that the complaint does not provide a sufficient factual basis for the assertion that the claim was brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."

■■■■ Such questions as whether plaintiff discovered the alleged false statements or should have discovered them in the exercise of reasonable diligence within one year of the time at which they were made are matters properly reserved for disposition on the basis of a full record, not on a motion to dismiss.[5] However, when the statute which creates the cause of action

---

4. In a footnote in this portion of the brief in support of motion to dismiss Hutton states that it should be provided with the date on which the securities which form the subject of this suit were purchased. But since this action is currently presented on behalf of a large class of purchasers, it would be unduly burdensome to require plaintiffs to state with any greater degree of certainty than has already been provided, the date of purchase for each plaintiff. However, pursuant to defendant's motion for a more definite statement, I will order that plaintiffs amend paragraph 6 of the complaint. That paragraph discusses only the purchase of partnership interests by the named plaintiffs. Those named plaintiffs should provide the dates of purchases by them with more specificity than currently appears in paragraph 6.

5. In its reply brief, defendant asserts that plaintiffs' claims are time barred under the doctrine of "inquiry notice." Defendant contends that under principles of inquiry notice plaintiffs should be credited with having discovered the fraud when they had "knowledge of facts which would have ignited an inquiry by a reasonably prudent person and if pursued with reasonable diligence would have resulted in the discovery of fraud." Reply brief at 8. It is not necessary for me to decide at this time whether such principles should apply in the present case since the question whether facts known to plaintiffs at a particular time "would have ignited an inquiry by a reasonably prudent person" and "would have resulted in discovery of the fraud" if pursued with reasonable diligence are obviously matters for a fact-finder and not questions

contains a statute of limitations, the plaintiff must plead facts which show that the claim is not time barred under that statute. "[I]n order properly to allege a claim under § 12(2), the complaint must set forth the time and circumstances of the discovery of the fraudulent statements, the reasons why discovery was not made earlier if more than one year has elapsed since the fraudulent conduct occurred, and the diligent efforts which plaintiff undertook in making or seeking such discovery." *Hill v. Der,* 521 F.Supp. 1370, 1389 (D.Del.1981). *See, e.g., Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308 (N.D.Ill.1984); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill.1981); *Woods v. Homes & Structures of Pittsburgh, Kansas,* 489 F.Supp. 1270 (D.Kan.1980); *Kroungold v. Triester,* 407 F.Supp. 414 (E.D.Pa.1975); *Kramer v. Scientific Control Corporation,* 352 F.Supp. 1175 (E.D. Pa.1973).

Paragraph 21 of the complaint states that plaintiffs first discovered the fraud in January 1984 when there was a reduction in the partnership's reserves and defendant sought to restructure the deal. This allegation meets the requirement for pleading the "time and circumstances of the discovery of the fraudulent statements."

The next requirement is that the complaint state the reasons why discovery was not made earlier if more than one year has elapsed since the fraud. As noted earlier, in the discussion of count one, the complaint avers that plaintiffs did not have any reason to suspect the fraud and did not discover the fraud until January 1984 due to the concealment of the fraud by defendant. Complaint ¶ 22. However, as was also discussed with regard to count one, these allegations are not pleaded with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Therefore, plaintiffs must amend the complaint to expand those allegations of fraudulent concealment which are deficient if plaintiff wishes to preserve the section 12(2) claim in count two.

which could be resolved at this stage of the

Furthermore, the complaint is devoid of the third type of allegation required to avoid the time bar of section 77m—a description of the diligent efforts made by plaintiffs to discover the fraud. Should plaintiffs choose to amend the complaint to correct the deficiencies noted in the allegations of fraudulent concealment, it will be necessary to include allegations which satisfy this requirement as well.

### (b) *Duty to tender securities*

Defendant's second argument for dismissal of the section 12(2) claim is that plaintiffs have failed to satisfy the explicit statutory requirement of "tender" of the securities. *See Wigand v. Flo-Tex, Inc.,* 609 F.2d 1028 (2d Cir.1979); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill.1981); *Rochambeau v. Brent Exploration, Inc.,* 79 F.R.D. 381 (D.Colo.1978).

The complaint does not allege tender in the past. Moreover, the complaint does not purport itself to be a vehicle of tender—a mechanism which has been held to constitute timely compliance with the statutory requirement. But plaintiff relies on the recital of paragraph 31 of the complaint that:

Defendant Hutton is therefore liable for rescission of the transaction pursuant to Section 12(2) of the Securities Act.

The demand for rescission, plaintiffs contend, constitutes an implicit tender of the securities sufficient to satisfy the pleading requirements of the statute. *See, Wigand v. Flo-Tex, supra* and *Adair v. Hunt International Resources Corp., supra.* Defendant's only response is that "where plaintiffs seek class action treatment, they must demonstrate that they have the putative class approval to seek [rescission]." Defendant's brief at 23. Defendant does not elaborate on this argument or present authority in support thereof. In light of defendant's failure to present this argument in a useful form, I will not consider it at this time. Denial of this aspect of de-

litigation.

fendant's motion will, therefore, not bar reassertion of this contention in a more fully developed form in a future motion or in response to plaintiffs' class certification application.[6]

### 3) *RICO claims*

Count three of the complaint alleges that the defendant's conduct violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 to 1968 ("RICO"). Specifically, the complaint alleges that defendant violated subsections (c) and (d) of Section 1962 of RICO and that those violations support civil liability under section 1964 of that statute.

The nature of the activity proscribed by RICO, and the statute's interweaving of criminal and civil liability, were recently discussed by the Court of Appeals for the Third Circuit in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 788–89 (3d Cir.1984):

> [RICO] makes it unlawful, *inter alia*, for any person to acquire or maintain any interest in or control of an "enterprise" through a "pattern of racketeering activity." 18 U.S.C. § 1962(b) (1982). RICO also makes it unlawful for any person employed by or associated with any enterprise to conduct the affairs of the enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c) (1982).
>
> An "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4) (1982). "Racketeering activity" is defined to include state law claims such as murder, bribery, and extortion, and a specified list of federal crimes that includes mail fraud, 18 U.S.C. § 1341 (1982), wire fraud, *id.* § 1343 (1982), and interstate transportation and sale of stolen and fraudulently obtained goods, *id.* § 2314–2315 (1982). 18 U.S.C.

§ 1961(1) (1982). A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5) (1982). In brief, RICO makes it unlawful to acquire or maintain control of an enterprise—broadly defined to include virtually any *de facto* or *de jure* association— through a pattern of criminal activity. 18 U.S.C. § 1962(b), (c) (1982). It is also unlawful to conspire to perform these acts. 18 U.S.C. § 1962(d) (1982). While RICO is primarily a criminal statute, it also provides for civil remedies, including a cause of action for treble damages, available to "[a]ny person injured in his business or property by reason of a violation of section 1962 ...." 18 U.S.C. § 1964(d) (1982).

The complaint alleges that the defendant violated subsection 1962(c) of RICO by "knowingly conduct[ing] and participat[ing] in the conduct of the affairs of Energy Resources and Hutton through a pattern of racketeering activity." Complaint at ¶ 35. It also avers that defendant violated subsection (d) of section 1962 by conspiring to conduct the affairs of those enterprises through a pattern of racketeering activity. Complaint at ¶ 36.

The pattern of racketeering activity alleged includes securities fraud, mail fraud, and wire fraud, all of which are federal offenses. But the complaint supplies no factual details regarding these alleged "racketeering activities."

Defendant challenges the viability of this count on a number of separate grounds. Certain of these arguments focus upon the sufficiency of the pleadings while others are directed to the substantive sufficiency of the claim. I will consider the latter first.

### a) *Need to establish prior criminal convictions*

Defendant asserts that in order to state a claim for civil relief under RICO, it is

---

**6.** Of the two decisions cited in which a demand for rescission was considered sufficient to satisfy the tender requirement, *Wigand v. Flo-Tex, Inc.*, 609 F.2d 1028 (2d Cir.1979), was a class

action. There is no suggestion in that opinion that class approval was a prerequisite to a proper demand for rescission in the section 12(2) claim.

essential that there have been a prior determination that the civil defendant is criminally liable for the offenses which allegedly constitute the "pattern of racketeering activity" upon which RICO liability is based. In support of this position, defendant relies upon the Second Circuit's recent decision in *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (1984), *cert. granted*, — U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985).

Most of the courts which have addressed this issue have concluded that RICO's civil liability provisions do not incorporate a requirement of prior criminal convictions. *E.g., Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272 (7th Cir. 1983); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir.1982); *Poling v. Morgan*, 598 F.Supp. 686 (D.Ariz. 1984); *Bennett v. E.F. Hutton Co.*, 597 F.Supp. 1547 (N.D.Ohio 1984); *Ora Corp. v. Vinson*, 596 F.Supp. 1546 (D.S.C.1984); *Maxwell v. Southwest National Bank, Wichita, Kan.*, 593 F.Supp. 250 (D.Kan. 1984); *Atlantic Federal Savings and Loan Association of Fort Lauderdale v. Dade Savings and Loan Association*, 592 F.Supp. 1089 (S.D.Fla.1984); *In re Longhorn Securities Litigation*, 573 F.Supp. 255 (W.D.Okla.1983); *Barker v. Underwriters at Lloyd's, London*, 564 F.Supp. 352 (E.D.Mich.1983); *Lode v. Leonardo*, 557 F.Supp. 675 (N.D.Ill.1982); *Kaushal v. State Bank of India*, 556 F.Supp. 576 (N.D.Ill.1983); *Mauriber v. Shearson/American Express Inc.*, 546 F.Supp. 391 (S.D.N.Y.1982); *State Farm Fire & Casualty Co. v. Caton*, 540 F.Supp. 673 (N.D.Ind.1982); *Glusband v. Benjamin*, 530 F.Supp. 240 (S.D.N.Y.1981); *Heinold Commodities, Inc. v. McCarty*, 513 F.Supp. 311 (N.D.Ill.1979); *Parnes v. Heinold Commodities, Inc.*, 487 F.Supp. 645 (N.D.Ill.1980); *Farmers Bank of Delaware v. Bell Mortgage Corp.*, 452 F.Supp. 1278 (D.Del.1978). However, several courts relying on *Sedima*, have gone the other way. *E.g., Berg v. First American Bankshares, Inc.*, 599 F.Supp. 500 (D.D.C.1984); *Gardner v. Surnamer*, 599 F.Supp. 477 (E.D.Pa. 1984); *Bernstein v. Bank Leumi Le-Israel B.M.*, 598 F.Supp. 922 (E.D.Pa.1984); *State of New York v. O'Hara*, 595 F.Supp. 1101 (W.D.N.Y.1984).

There is much that is compelling in the *Sedima* rationale. As Judge Oakes shows, zealous plaintiffs seem with considerable frequency to be trying to employ RICO in settings far removed from the organized crime context which was in the forefront of congressional awareness when the statute was enacted. Undoubtedly, this threatened distortion of the statute could be significantly restrained by limiting civil RICO liability to those instances in which antecedent criminal liability for predicate acts has already been established. Nonetheless, the text of the statute does not, in terms, contemplate such a restrictive reading, and I see nothing in the legislative history that warrants importing such a limitation into the statute. If Congress feels that RICO is being taken too far afield, Congress has both the responsibility and the competence to fashion suitable narrowing amendments.

Accordingly, I will deny defendant's motion to dismiss count three to the extent that it relies upon the proposition that civil liability under RICO must be preceded by a finding of criminal responsibility.[7]

---

7. Plaintiffs suggest that the opinion of the Court of Appeals for the Third Circuit in *United States v. Frumento*, 563 F.2d 1083 (1977), compels the conclusion that prior convictions for predicate racketeering acts are unnecessary to establish civil liability under RICO. In that opinion, Judge Rosenn, speaking for the majority of the panel, stated:

As we read the Organized Crime Control Act, Congress was not so much concerned with limiting the protective and remedial features of the Act to business and labor organizations as it was with reducing the insidious capabilities of persons in organized crime to infiltrate the American economy. This accounts for the new civil remedies in the Act which permit equitable restraint of economic activity engaged in by organized crime *as a substitute for criminal prosecution* with its attendant procedural and constitutional protection for defendants.

*Id.* at 1090 (emphasis added).

*Frumento*, however, involved the question whether a prior conviction for predicate racket-

**b)** *Need to establish "racketeering injury"*

Defendant also argues that civil RICO liability must be based upon injury beyond that caused by the individual racketeering activities which are a predicate to liability. Defendant asserts that plaintiffs must plead and prove an injury arising out of the organized nature of the misconduct or an injury from racketeering itself as well as injury from the predicate criminal acts. Defendants again relied upon Judge Oakes' analysis in *Sedima* in support of this position.

I considered this issue recently in *General Accident Insurance Company of America v. Fidelity and Deposit Company of Maryland,* 598 F.Supp. 1223 (1984), and concluded that "the arguments against the imposition of a racketeering enterprise injury requirement [are] quite compelling." However, I did not rule on that issue because the complaint in question alleged a "racketeering enterprise injury." The allegations in the present complaint do not establish whether plaintiff has suffered a racketeering enterprise injury or merely injury from the individual predicate acts of racketeering. Therefore, I must resolve the question left open in *General Accident.*

 Neither defendant's arguments on the present motion nor the case law since the date of the *General Accident* opinion have, in my view, strengthened the arguments in support of a racketeering enterprise injury requirement. Consequently, I retain the view expressed in that opinion that civil RICO liability does not depend upon pleading or proof of a unique injury other than the injury caused by the predicate racketeering acts. For the reasons stated in *General Accident* and the decisions cited therein which have reached the same conclusion, I conclude that a racketeering enterprise injury is not essential to pleading or proof of a civil RICO claim.

**c)** *Need to establish a link to organized crime*

 Defendant also contends that a civil RICO plaintiff must establish a nexus between the RICO claim and organized crime. *E.g., Gilbert v. Prudential-Bache Securities, Inc.* (CCH) Fed.Sec.L.Rep. ¶ 91,-573 (E.D.Pa.1984) *interlocutory appeal pending* No. 84–1283 (3d Cir.); *American Savings Ass'n v. Sierra Federal Savings & Loan Ass'n,* 586 F.Supp. 888 (D.Colo. 1984); *Bruns v. Ledbetter,* 583 F.Supp. 1050 (S.D.Cal.1984); *Hokama v. E.F. Hutton & Co.,* 566 F.Supp. 636 (C.D.Cal.1983); *Noland v. Gurley,* 566 F.Supp. 210 (D.Colo. 1983); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill. 1981); *Barr v. WUI/TAS,* 66 F.R.D. 109 (S.D.N.Y.1975). *See also Aliberti v. E.F. Hutton & Co.,* 591 F.Supp. 632 (D.Colo. 1984).

However, as plaintiffs note, every appellate court which has considered this issue to date, has concluded that no nexus between the claim and organized crime need be pleaded or proven. *E.g., Owl Construction Co. v. Ronald Adams Contractor,* 727 F.2d 540 (5th Cir.1984); *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir.1983); *Schacht v. Brown,* 711 F.2d 1343 (7th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982), *aff'd en banc,* 710 F.2d 1361 (1983), *cert. denied sub nom. Prudential Insurance Co. v. Bennett,* —— U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). In addition, the great majority of district court decisions on this issue have determined that no such organized crime nexus is necessary. *E.g., Berg v. First American Bankshares, Inc.,* 599 F.Supp. 500 (D.D.C.1984); *Maxwell v. Southwest National Bank, Wichita, Kan.,* 593 F.Supp. 250 (D.Kan.1984); *Wilcox v. Ho-Wing Sit,* 586 F.Supp. 561 (N.D.Cal. 1984); *Joseph v. Algemene Bank Nederland, N.V.,* 592 F.Supp. 141 (W.D.Pa.1984);

---

eering acts was essential to criminal liability under *RICO.* The court did not consider whether prior convictions were essential to civil liability. Therefore, although *Frumento* provides some guidance with regard to the present motion, it does not compel the conclusion that prior convictions are not essential for civil RICO liability.

*Slattery v. Costello,* 586 F.Supp. 162 (D.C. C.1983); *In re Catanella and E.F. Hutton & Co. Securities Litigation,* 583 F.Supp. 1388 (E.D.Pa.1984); *Bankers Trust v. Feldesman,* 566 F.Supp. 1235 (S.D.N.Y. 1983); *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983); *Eisenberg v. Gagnon,* 564 F.Supp. 1347 (E.D.Pa.1983); *Hunt International Resources Corp. v. Binstein,* 559 F.Supp. 601 (N.D.Tex.1982); *Crocker National Bank v. Rockwell International Corp.,* 555 F.Supp. 47 (N.D.Cal.1982); *Meineke Discount Muffler Shops, Inc. v. Noto,* 548 F.Supp. 352 (S.D.N.Y.1982); *Mauriber v. Shearson/American Express,* 546 F.Supp. 391 (S.D.N.Y.1982).

Upon consideration of the reported decisions on this issue, I decline to adopt this limitation on the availability of the civil RICO remedy. As Judge Giles noted in his thoughtful and thorough analysis of this issue in *Kimmel v. Peterson,* 565 F.Supp. 476, 490–93 (E.D.Pa.1983), the requirement of a nexus to organized crime is inconsistent with the clear terms of the statute and the vast majority of court decisions as well as the legislative history of RICO. Consequently, I conclude that no organized crime nexus must be pleaded or proved to state a claim under RICO's civil liability provisions.

d) *Distinction between enterprise and defendant*

Defendant contends that the complaint fails to identify an "enterprise" apart from the defendant. It asserts that such a distinction between the enterprise and the defendant is essential to RICO liability.

Plaintiffs respond that RICO established no requirement that the defendant and the enterprise be distinct entities. In addition, plaintiffs assert that the complaint identifies both defendant and Energy Resources as "enterprises." Therefore, plaintiffs argue, an enterprise is identified in the complaint which is distinct from the defendant.

At the time of the filing of the briefs on this motion, there was no definite Third Circuit ruling on this issue. *See Seville Industrial Machinery Corp. v. Southmost*

*Machinery Corp.,* 742 F.2d 786, 790 (3d Cir.1984). However, on December 31, 1984, the court, speaking through Judge Seitz, held that "a violation of section 1962(c) by a corporate entity requires an association with an enterprise that is not the same corporation." *B.F. Hirsch v. Enright Refining Company,* 751 F.2d 628, 634 (3d Cir.1984). Therefore, it is necessary to look to the complaint to determine whether plaintiffs have identified adequately an enterprise associated with the defendant which is an entity other than the defendant.

The complaint states that "Energy Resources and Hutton are enterprises within the meaning of 18 U.S.C. § 1961(4)." Complaint at ¶ 33. Consequently, an enterprise other than the defendant—Energy Resources—is identified in the complaint. The only remaining question is whether the complaint alleges a relationship between defendant and Energy Resources of the type which would form the basis for RICO liability.

■ RICO requires (a) that the defendant be "employed by or associated with" the enterprise and (b) that the defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Paragraph 35 of the complaint plainly satisfies the second of those requirements by alleging that the "[d]efendant [Hutton] knowingly conducted and participated in the conduct of the affairs of Energy Resources and Hutton through a pattern of racketeering activity." The complaint does not in terms allege that Hutton was "associated with" Energy Resources. Nonetheless, I conclude that the allegation that Hutton "knowingly conducted and participated in the conduct of Energy Resources" sufficiently comprehends the required *association* of Hutton and Energy Resources to satisfy the pleading requirements of RICO. Accordingly, I will deny the motion to dismiss the RICO count on this ground.

### e) *Conspiracy*

Plaintiffs assert that defendant violated both § 1962(c) of RICO and § 1962(d). The latter subsection states:

It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

Defendant contends that the allegations of conspiracy in the present complaint are deficient because they allege solely a conspiracy between defendant and itself which is legally impossible. Defendant then argues that, assuming *arguendo*, the complaint alleges a conspiracy between defendant and its employees, that is also legally insufficient to state a conspiracy claim. Finally, defendant requests that, if the claim pursuant to subsection (d) of section 1962 is allowed to remain in the action, plaintiffs be required to replead that claim to provide more specificity as to the nature of the conspiracy and the identity of the conspirators.

Plaintiffs respond that the complaint clearly states that defendant conspired with others although the identities of those others are not provided. Plaintiffs suggest that it is obvious from the complaint that the others with whom defendant conspired were the other promoters of Energy Resources. Furthermore, plaintiff attacks the legal proposition asserted by defendant and cites authority for the proposition that a corporation may be held liable for a conspiracy among its agents. Before I can consider the legal arguments of defendant in support of the motion to dismiss, I must be satisfied that plaintiffs' complaint asserts facts which would make out the type of legal claim challenged in defendant's motion. Therefore, in the present case, I should only consider the challenges to the legal viability of claims of intracorporate conspiracy if such claims appear in the complaint. However, the conspiracy allegations in the present complaint are so vague that it is impossible to determine whether plaintiffs have alleged a conspiracy among Hutton's employees or between Hutton and its employees as opposed to some other type of conspiracy.

Rule 8 of the Federal Rules of Civil Procedure requires only that the pleader present a short plain statement of the claim showing the pleader is entitled to relief. Unlike fraud and mistake, *see* Rule 9(b), it is unnecessary to plead conspiracy claims with any greater specificity than other legal claims. However, "the complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading." C.A. Wright & A.R. Miller, *Federal Practice and Procedure* § 1233 at 181 (1969). "A general allegation of conspiracy without a statement of facts was an allegation of legal conclusion and insufficient to state a cause of action." *Black & Yates, Inc. v. Mahogany Ass'n, Inc.*, 129 F.2d 227, 232 (3d Cir. 1941) *cert. denied*, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1941).

The only conspiracy allegations are found in the following paragraphs:

34. Defendant individually and in conspiracy with others engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

35. Defendant conspired to conduct the affairs of the above enterprises [Hutton and Energy Resources] through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

None of the other allegations in the complaint provides factual support for these broad allegations of conspiracy.

These allegations do not satisfy the minimal pleading requirements of Rule 8. It is not necessary or appropriate for the complaint to contain evidentiary details regarding the conspiracy but plaintiffs must provide defendant and this court with some factual recitation which establishes a basis for the legal conclusion reached in paragraphs 34 and 36. Plaintiffs need not identify all members of the alleged conspiracy or describe the conspiracy and its formation in great detail. Plaintiffs should, however, describe the general composition

of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy.

Because of the deficiencies in the conspiracy allegations of the complaint, I will dismiss count three to the extent it seeks to state a claim pursuant to 18 U.S.C. § 1962(d) but will do so without prejudice to plaintiffs' entitlement to amend the complaint to correct these deficiencies. In light of the fact that I cannot, on the basis of the allegations in the original complaint, state as a matter of law that the complaint alleges only a conspiracy among the agents of the defendant; between the defendant and one or more of its employees; or between the defendant and itself, I will deny the motion to dismiss to the extent that it contends that such allegations cannot support a valid conspiracy claim. The denial of that portion of the motion is without prejudice to defendant's entitlement to reassert these arguments at a later stage of this litigation.

### f) *Particularity of fraud allegations*

Defendant presents two general lines of attack on the sufficiency of the RICO count based upon the duty imposed by Rule 9(b) to plead fraud with particularity. The first contention is that because count three incorporates all of the earlier paragraphs of the complaint, to the extent that those prior paragraphs fail to plead fraud with particularity, they undermine the legal sufficiency of the pleadings which form the basis for the RICO claim. The arguments in support of this position are those raised in support of the motion to dismiss count one. Consequently my disposition of those arguments earlier in this Opinion resolves this contention with regard to count three as well.

The second contention regarding the inadequacy of the fraud pleading related to count three is that the individual acts of racketeering which are necessary predicates to RICO liability are not pleaded with particularity. These "predicate acts" are identified in paragraph 34 of the complaint as follows:

(a) defendant committed repeated acts of fraud in the sale of securities;

(b) defendant knowingly and willfully transmitted or caused to be transmitted through the mails numerous materials in furtherance of its scheme to defraud, in violation of 18 U.S.C. § 1341; and

(c) defendant transmitted or caused to be transmitted on numerous occasions sounds and other information by wire communication in interstate commerce in the course of executing the fraudulent scheme described above, in violations of 18 U.S.C. § 1343.

To establish liability under RICO, it is necessary to plead and prove a "pattern of racketeering activity." That is established by the occurrence of at least two acts of "racketeering activity" during a ten year period. "Racketeering activity" includes a wide range of state and federal offenses. The allegations in paragraph 34 are designed to satisfy this requirement. Plaintiffs allege that defendant participated in acts of securities fraud, mail fraud, and wire fraud which establish a pattern of racketeering activity.

Unlike some of the offenses which may be included in a "pattern of racketeering activity," all three of these categories of offenses are matters involving fraud. Therefore, pursuant to Rule 9(b), they must be pleaded with specificity. This is particularly important in civil RICO pleadings in which the predicate racketeering acts are critical to the sufficiency of the RICO claim. Many courts have held that this fact alone requires the civil RICO plaintiff to allege the "pattern of racketeering activity" with sufficient particularity to allow the conclusion that these offenses were probably committed. *E.g., Laterza v. American Broadcasting Co.*, 581 F.Supp. 408 (S.D.N.Y.1984); *Umstead v. Durham Hosiery Mills, Inc.*, 578 F.Supp. 342 (D.N.C.1984); *Bache Halsey Stuart Shields Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042 (D.Utah 1983).

■ Therefore, plaintiffs must plead with specificity at least two "racketeering

acts" which will be used to form the basis for a "pattern of racketeering activity." Although pleading fraud with specificity may be quite difficult in the class action context when the alleged fraudulent misrepresentations were orally made to a large number of plaintiffs, this problem is not as significant with regard to the pleading of the predicate racketeering acts. It is not necessary that two predicate acts be alleged which affected each potential class member. It is only necessary to plead two racketeering acts which were part of the pattern of racketeering activity used by defendant to conduct or participate in the conduct of the enterprise and thus, indirectly affected all plaintiffs. In addition, it should be much less difficult to plead the alleged acts of mail fraud with specificity than it would be in the class action context to plead the circumstances of oral fraud. Moreover, a necessary part of plaintiffs' section 10(b) and rule 10(b)–5 claim is the proper pleading of securities fraud. Once these pleadings are amended to correct the deficiencies noted earlier, plaintiffs will have satisfied their obligations to plead at least one of the predicate racketeering acts with specificity.

Accordingly, I will dismiss count three due to the failure to plead with specificity at least two racketeering acts which will be established as part of the pattern of racketeering required for a civil RICO claim. Plaintiffs will be allowed to amend these claims to correct this deficiency at the time of the other amendments allowed by this Opinion.

### 4) State law claims

The remaining claims—counts four, five and six—present causes of action created by state common law. Because the complaint invokes only this court's federal question jurisdiction, jurisdiction of these claims is pendent on jurisdiction under the first three counts. The dismissal of counts one, two and three with leave to amend thereby warrants the decision to decline to exercise pendent jurisdiction of these state law claims. However, since dismissal of

the federal claims is without prejudice to amendments of the complaint to present the federal question claims in proper form, it is possible that one or more of the federal claims will be revived in an amended complaint. Therefore, assuming *arguendo* that a basis for pendent jurisdiction will be preserved, I will consider defendant's challenges to the state law claims.

### a) *Statute of limitations on common law fraud and negligence*

Count four of the complaint alleges a claim for common law fraud and deceit and count six alleges a negligence claim. Defendant asserts that both of these claims are barred by the two-year statute of limitations applicable to such actions under Pennsylvania law. 42 Pa.Cons.Stat.Ann. § 5524(7).

Although I cannot, without further development of the circumstances surrounding this litigation, determine as a matter of law which state's law will apply to these common law claims, I will consider this issue under the assumption that these claims must be allowed to survive the present motions if, pursuant to any potentially applicable statute of limitations, the claims would not be barred. Since there is at least some possibility that Pennsylvania law would apply to these claims and since the parties have only addressed this issue under Pennsylvania law, I will look at the principles governing the running of the limitations period in that jurisdiction.

In Pennsylvania, as in many states, fraudulent concealment of a cause of action tolls the running of the statute so that the limitations period would not commence until the claim had been discovered. *E.g., Swietlowich v. Bucks County*, 610 F.2d 1157 (3d Cir.1979); *U.S. Fidelity & Guaranty Co. v. DiMassa*, 496 F.Supp. 71 (E.D. Pa.1980); *Miller v. Hawkins*, 416 Pa. 180, 205 A.2d 429 (1964). For the statute to be tolled in this manner, it is not necessary for the underlying cause of action to be one for fraud. *Gee v. CBS, Inc.*, 471 F.Supp. 600 (E.D.Pa.1979) *aff'd*, 612 F.2d 572 (3d Cir. 1980).

As discussed earlier in this Opinion, plaintiffs assert that defendant's fraudulent concealment of the underlying wrongdoing alleged in the complaint precluded plaintiffs from discovering the alleged negligence or fraud until January 1984. Plaintiffs assert that the equitable tolling doctrine should apply to their state law claims as well as their federal claims.

However, as discussed with regard to count one, plaintiffs have failed to plead fraudulent concealment with sufficient specificity to satisfy Rule 9(b). Since plaintiffs will be allowed an opportunity to replead those allegations to present proper allegations of fraudulent concealment, that amendment would presumably also establish, as a matter of pleading, a sufficient basis for tolling the statute of limitations applicable to these claims. Therefore, I deny the present motion to dismiss these counts provided that plaintiffs present sufficient allegations of fraudulent concealment in an amended complaint. Should no such amended complaint be filed within the time authorized by an Order accompanying this Opinion, this decision will be without prejudice to defendant's entitlement to renew this aspect of the present motion.

### b) *Breach of fiduciary duty*

Count five of the complaint asserts a common law claim for breach of fiduciary duty. It alleges that defendant owed plaintiffs a fiduciary duty since defendant acted as plaintiffs' agent with regard to the purchase of interests in Energy Resources. Plaintiffs then assert that defendant breached this duty by benefiting itself at plaintiffs' expense "as more fully described above." Complaint at ¶ 44.

Defendant contends that these allegations fail to identify what duty existed or how it was breached. This contention is without merit.

 The complaint clearly alleges that defendant, acting as an agent for plaintiffs in their purchase of interests in Energy Resources, was in the position of a fiduciary in relation to plaintiffs. Complaint at ¶¶ 7, 43. In general, a broker, such as defendant, must act in good faith, with reasonable care, skill and diligence, and must advise his principals of relevant facts and circumstances known to the broker. Brokers §§ 56, 57, 12 *Corpus Juris Secundum* (1980); Brokers §§ 83, 84, 12 *Am. Jur.2d* (1964).[8]

The complaint also alleges that Hutton acted fraudulently and negligently with regard to plaintiffs by making representations of fact regarding the Energy Resources partnership and by failing to inform plaintiffs of essential facts. Complaint at ¶¶ 15 to 22. As a result, plaintiffs allege, defendant received substantial commissions on the sale of the Energy Resources interests while plaintiffs suffered financial losses. Complaint at ¶¶ 7, 27, 37, 40, 45. This type of activity on the part of defendant would obviously amount to a breach of the duty to act in good faith and with reasonable care, skill and diligence. Therefore, plaintiffs have adequately pleaded a breach of fiduciary duty by defendants to withstand the present motion to dismiss.

### 5) *Motion for a more definite statement*

In addition to the challenges to the legal sufficiency of the complaint addressed above, defendant requests that this court grant a motion for a more definite statement with regard to paragraphs 6, 15, 16, 17, 18, 19, 25, 30, 34, 35, 36, 37, 39, 43, 44, 48, and 49 of the complaint.

Paragraph 6 provides general information about plaintiff Araraquara. That paragraph states that Araraquara purchased its interest in Energy Resources "after July 8, 1981" and was required to pay a further assessment on the partnership in mid-1982. This allegation is unnec-

---

**8.** Because I am not in possession of sufficient information regarding the circumstances surrounding the claims asserted in this action or the nature and membership of the potential class of plaintiffs, I cannot, at this time, determine which state's common law will apply to this claim.

essarily vague and should be supplemented to state the dates on which Araraquara purchased the interest in Energy Resources and the date in 1982 on which Araraquara was required to pay a further assessment on the partnership. This information is certainly within the possession of the named plaintiffs and should be provided to reduce the burden on defendant in preparing a responsive pleading.

I have reviewed paragraphs 15, 16, 17, 18, and 19 with regard to other arguments raised in this motion to dismiss and have found paragraphs 15, 17, and 18 sufficient. Therefore, I will not order a more definite statement of those allegations. However, due to the problems noted earlier in paragraphs 16 and 19, plaintiffs will be ordered to amend these paragraphs to present those allegations with greater specificity.

Paragraph 25 states generally that plaintiffs were defrauded by defendant's misrepresentations and omissions of material facts. This paragraph is sufficient to the extent that it relies upon the earlier paragraphs of the complaint to identify the misrepresentations allegedly made by defendant. However, it also states that defendant made *omissions* of fact which form a basis for a section 10(b) and rule 10(b)–5 claim. No such omissions are identified elsewhere in the complaint. If plaintiffs wish to press their claims of securities fraud on the basis of omissions of fact, plaintiffs must present allegations which support such a claim and plead the nature and circumstances of the allegedly fraudulent omissions with specificity.

Paragraph 30 which alleges that defendant was negligent should also be amplified to state the general nature of the defendant's failure to exercise reasonable care.

I reviewed the sufficiency of paragraphs 34, 35, 36, and 37 in ruling on the legal sufficiency of the RICO count of the complaint. Pursuant to the resolution of those issues, paragraphs 35 and 37 need not be amended since they are sufficient in their current form, but paragraphs 34 and 36 must be amended to rectify the errors noted earlier.

I have also reviewed paragraphs 39, 43, 44, 48, and 49 and conclude that these paragraphs are sufficient when read in the context of the entire complaint. Therefore, I will deny the motion for a more definite statement of those paragraphs.

### 6) *Class Certification*

As noted at the outset of this Opinion, plaintiffs filed a motion for class certification in late August, 1984, to which no response has been filed. Because defendant may have assumed that no response was necessary until the motion to dismiss was resolved and because my rulings on the motion to dismiss will result in dismissal of the action if no amended complaint is filed in the time provided, I will not rule on the class certification motion at the present time. Defendant will be allowed twenty days from the filing of an amended complaint which corrects the problems identified in this Opinion in which to file its response to plaintiffs' class certification motion.

The determinations made in this Opinion will be reflected in an accompanying Order which will also contain a timetable for the filing of an amended complaint and a response to the motion for class certification.