HUNT INTERNATIONAL RESOURCES CORPORATION and Nelson Bunker Hunt

v.

Mark P. BINSTEIN.

No. CA3–80–0863–F.

United States District Court, N.D. Texas, Dallas Division.

May 27, 1982.

Hughes & Hill by Phillip N. Smith, Jr., John L. Hill, William B. Finkelstein, Dallas, Tex., for plaintiff.

Mark P. Binstein, pro se.

ORDER

ROBERT W. PORTER, District Judge.

This action is currently before the Court on Defendant's motion to dismiss for failure to state a claim upon which relief may be granted. The issue to be decided is whether the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, (RICO), is limited in its application to activities connected with organized crime.[1]

In the context of a criminal RICO case, the Supreme Court set out the following

---

1. Defendant also raises res judicata and collateral estoppel issues which are inappropriate in a 12(b)6 motion.

method of statutory construction: "In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (citations omitted).

The RICO statute is unambiguous, and after a review of the legislative history, this Court concludes that Congress did not clearly demonstrate an intent which is contrary to the plain language of the Act.

Congress chose to attack the problem of organized crime in terms of patterns of behavior characteristic of racketeers rather than to attempt definition of the amorphous concept 'organized' crime and make membership therein unlawful.[2] Congress perceived that drafting the act in terms of status would present grave constitutional problems.[3] The Act was drafted broadly in order to give added flexibility to the federal criminal system to apprehend racketeers.[4]

A vocal minority, including Senators Kennedy and Hart and Representatives Mikva, Conyers, and Ryan, repeatedly objected to the "broad" and "overreaching scope" of the Act both in the committee hearings and on the floor of Congress.[5]

Strong dissents were also raised by the ACLU and the Association of the Bar of the City of New York Commission on Federal Legislation, The Proposed OCCA 1969, S. 30 (1970).[6]

These objections were overridden by the majority which, in the words of Senator McClellan, determined that the statutory language had "been confined to ... [cases involving organized crime] to the maximum degree possible while preserving the ability to administer the act and its effectiveness as a law enforcement tool".[7] Senator McClellan explained in floor debate that the Act was not designed to convert every fraud, misrepresentation or other act violative of state law into a RICO action.[8] Congress attached stringent pleading requirements to minimize the number of occasions where "its provisions would have an incidental reach beyond organized crime."[9]

However, Congress accepted some "incidental" reach of the act to persons not involved in organized crime in order to achieve the flexibility desired to cope with the "horrendous evil that besets our nation".[10]

This Court recognizes a line of cases, including one in the Fifth Circuit, holding that a RICO cause of action against a non-racketeering defendant is invalid.[11] The

2. Remarks by Senator McClellan June 9, 1970 91st Cong.2d Sess. daily edition pp. S8642–87.

3. Organized Crime Control: Hearings on S. 30 *and related proposals before Subcommittee No. 5 of the House Committee on the Judiciary,* 91st Cong., 2d Sess. 490 (1977) (Statement of Rep. Poff, House Floor Manager) ("House Hearings")

4. Floor Debate between Sen. McClellan and Sen. Kennedy, January 22, 1970, 91st Cong.2d Sess. S416.

5. Senate Hearings, p. 534 (Proposed definition of "Crime Syndicate") House Report, p. 4091 (Dissenters noted and criticized absence of definition of organized crime); 116 Cong.Rec. 35204, Oct. 6, 1970 (Statement of Rep. Mikva); 116 Cong.Rec. 35343, 35346, Oct. 7, 1970 (amendment proposed by Rep. Biaggi to define "organized crime").

6. 116 Cong.Rec. S422, daily ed., Jan. 22, 1970.

7. Sen. McClellan remarks, June 9, 1970, 91st Cong.2d Sess. S8645.

8. Floor Debate between Sen. McClellan and Sen. Kennedy Jan. 22, 1970, 91st Cong.2d Sess. at 416.

9. Sen. McClellan remarks, June 9, 1970, 91st Cong.2d Sess. S8645.

10. Remarks of Rep. Celler, 116 Conf.Rec. Oct. 7, 1970 at 35302.

11. *See Waterman Steamship Corp. v. Avondale Shipyards Inc.,* 527 F.Supp. 256 (E.D.La.1981); *North Barrington Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980); *Adair v. Hirco,* 79–C 9206, June 11, 1981 (N.D.Ill); *Landmark Savings & Loan v. Rhoades,* 527 F.Supp. 206 (E.D.Mich.1981).

cases apparently holding that a nexus with organized crime is a requisite element to a civil RICO cause of action may be distinguished from the case at bar. In each case the Plaintiff alleged injury resulting from the underlying fraud or wrong. In the case at bar Plaintiffs allege injury by the infiltration of "racketeering influence" into an "enterprise". It is this allegation which transforms a common law fraud or misrepresentation, actionable under state law, into an "enterprise" injury covered under RICO. Whether the injury is committed by a "racketeer" *per se* is irrelevant. This Court respectfully disagrees with these cases insofar as they hold that Congress intended "that RICO should apply only to actions involving organized crime activities, and not to every day civil actions like those in this proceeding, involving private litigants with no relationship to organized crime."[12] This Court finds that congressional intent was to reach the acts defined, with or without nexus to organized crime, so long as the allegations meet the stringent pleading requirements of a valid RICO action.

For the reasons set out above, the Defendant's motion to dismiss must be denied. It is accordingly

ORDERED that Defendant's motion to dismiss is in all things denied and that Defendant file an answer within 20 days of the date of this order.

---

12. Waterman, at p. 9.