James E. SLATTERY, et al., Plaintiffs,

v.

John COSTELLO, et al., Defendants.

Civ. A. No. 83–0982.

United States District Court, District of Columbia.

July 28, 1983.

William Dobrovir, Dobrovir & Gebhardt, Washington, D.C., Allan Kanner, Philadelphia, Pa., for plaintiffs.

Douglas Lashley, Beckett, Cromwell & Myers, Bethesda, Md., Thomas Dyson, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

This matter is before the Court on the defendants' motion to dismiss the complaint pursuant to "Rules 12(b)(6), 21 and 23 of the Federal Rules of [Civil] Procedure." According to the complaint, the plaintiffs are two former clients of an executive employment service who allegedly represent a class of over 2,000 similarly situated clients. The defendants are five individuals and two District of Columbia corporations involved in furnishing executive placement services to the public. The gravamen of plaintiffs' complaint is that each member of the alleged class paid sums of money to the defendants in order to obtain executive placement services based on the defendants' allegedly fraudulent representations about the defendants' resources and capabilities. In short, the complaint alleges that the defendants induced the plaintiffs to pay for job search services which the defendants never actually had the intention or ability to perform. The plaintiffs have alleged four separate claims in their alleged class action: a claim for treble damages under the federal civil racketeering statute (18 U.S.C. § 1964(c) (1976)); a claim for treble damages under the District of Columbia's Consumer Protection Act (D.C.Code § 28–3904); and two claims for misrepresentation and fraud.

In their motion to dismiss the defendants raise three separate grounds for dismissing the complaint. The initial reason set forth in their motion is that this Court lacks subject matter jurisdiction because of an allegedly pending case in the

District Court for the Eastern District of Pennsylvania docketed as *Eisen v. National Executive Search, Inc.*, No. 82–4657. The *Eisen* case, however, was denied class certification and, in fact, a default judgment was entered in that case. While this Court has little difficulty in deferring to matters more properly before a court of equal competence, *cf. Brinco Mining v. Federal Ins. Co.*, 552 F.Supp. 1233 (D.D.C. 1982), defendants' contention that this Court lacks subject matter jurisdiction due to an allegedly contested default judgment in another federal forum is completely without merit.

Defendants' second ground for dismissing the complaint is a general argument about misjoinder (Rule 21) and whether this case is appropriately maintained as a class action (Rule 23). In response to defendants' arguments regarding dismissal for misjoinder the Court refers the defendants to the first sentence of Rule 21. Defendants' Rule 23 arguments are not yet ripe because the class certification issue is not presently before the Court.

Defendants' third contention in support of dismissal relates only to the plaintiffs' civil racketeering allegations. Basically, the defendants present two separate reasons for dismissing the cause of action brought under 18 U.S.C. § 1964(c) (Civil RICO). Initially the defendants suggest that the federal civil racketeering statute can only be used against civil defendants with some demonstrated connection to "organized crime." Alternatively, the defendants argue that the civil RICO count should be dismissed because the plaintiffs lack standing to sue under the terms of 18 U.S.C. § 1964(c) (1976). Although the Court will address both of defendants' arguments, the Court would like to clarify its position on a preliminary matter raised by the defendants.

■ In their latest pleading the defendants have attempted to distinguish the plaintiffs' citations by claiming that the case law generated through judicial construction of the criminal racketeering statutes (18 U.S.C. §§ 1962(a)–(d)) (RICO) is inapplicable to the civil racketeering provisions in 18 U.S.C. § 1964(c). This Court must disagree with the defendants' views on the applicability of criminal precedent to RICO's civil provisions. As one court recently stated:

> Permission to bring a civil action for a RICO violation, 18 U.S.C. § 1964(c), extends to those injured by a violation of the criminal RICO prohibitions, 18 U.S.C. § 1962. Had the Congress not intended civil RICO plaintiffs to prove the same elements which the Government must prove in a criminal case, it undoubtedly would not have defined a civil violation with specific reference to a criminal one. Therefore, in deciding whether plaintiffs have properly alleged a civil RICO claim, we may properly draw upon those criminal RICO cases which have described the essential elements of such a claim.

*Eaby v. Richmond*, 561 F.Supp. 131, 134 (E.D.Pa.1983). In any event, given the inapplicability of the rule of lenity, *see Rewis v. U.S.*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), to civil proceedings and RICO's statutory mandate for a liberal construction, 18 U.S.C. § 1961, note, this Court would be hard pressed to justify a narrower construction of RICO's civil cause of action than that afforded RICO's criminal provisions.

■ The defendants have asked the Court to follow a few reported cases which have implied an "organized crime connection" before recognizing a valid complaint under civil RICO. *See, e.g., Adair v. Hunt Int'l Resources Corp.*, 526 F.Supp. 736–48 (N.D.Ill.1981); *Moss v. Morgan Stanley, Inc.*, 553 F.Supp. 1347, 1361 (S.D.N.Y. 1983). The clear and overwhelming majority of courts which have addressed this question, however, have rejected any attempt to add an "organized crime" requirement onto the statutory terms of 18 U.S.C. § 1964(c). *Schact v. Brown*, 711 F.2d 1343 (7th Cir.1983); *Bennett v. Berg*, 685 F.2d 1053, 1063 (8th Cir.1982), *aff'd, en banc*, 710 F.2d 1361 (8th Cir.1983); *Hunt Int'l Resources Corp. v. Binstein*, 559 F.Supp. 601 (N.D.Tex.1982); *Crocker Nat'l Bank v.*

*Rockwell Int'l Corp.*, 555 F.Supp. 47 (N.D. Calif.1982); *Meineke Discount Muffler Shops, Inc. v. Noto*, 548 F.Supp. 352 (S.D. N.Y.1982); *Mauriber v. Shearson/Amer. Express*, 546 F.Supp. 391 (S.D.N.Y.1982); *cf. United States v. Cauble*, 706 F.2d 1322, 1330 (5th Cir.1983) ("judicial consensus that [RICO] may be used even though no organized crime activity is charged"). Reference to the legislative history of RICO's provisions reveals that Congress drafted RICO in broad terms to avoid creating a criminal offense whose definition depended on a term as vague as "organized crime." *See* 116 Cong.Rec. 35, 204 (1970); 116 Cong. Rec. 35,343–46 (1970). In light of Congress's understandable reluctance to draft a criminal offense in terms of a relation to some ill-defined notion of organized crime this Court has no difficulty following the majority of courts by refusing to add such a requirement to RICO's civil provisions.

The defendants' alternative argument for dismissal of the Civil RICO count focuses on the status of the plaintiffs rather than that of the defendants. Defendants argue that the plaintiffs lack standing to sue under Civil RICO. The plain terms of the statute confer standing to "[a]ny person injured in his business or property." 18 U.S.C. § 1964(c) (1976). The defendants, relying on a few reported district court opinions, ask this Court to look beyond the plain terms of the statute to determine whether the plaintiffs belong to that group of litigants for whom the statute was enacted. The defendants contend that plaintiffs lack standing because they have not alleged either "competitive injury" or what has been termed "racketeering enterprise injury." The Court will address these two standing arguments raised by the defendants as though they are distinct although the distinction between the two standing tests is less than clear.

█ Briefly stated, the "competitive injury" standing requirement which the defendants ask this Court to place upon 18 U.S.C. § 1964(c) would require that the plaintiffs allege some type of commercial, business-related injury before they could invoke the statute. In other words, the defendants assert that the plaintiff must allege that they were placed at a competitive disadvantage due to the defendants' conduct. The few courts that have endorsed the "competitive injury" test have done so in the belief that because 18 U.S.C. § 1964(c) was modeled after traditional antitrust remedies the standing requirements of the antitrust field should be brought into play in actions under 18 U.S.C. § 1964(c). Upon analysis, however, there are few, if any, satisfactory grounds for requiring a showing of "competitive injury" from plaintiffs under civil RICO. To begin with, there is legislative history to suggest that Congress intended to thwart the imposition of restrictive antitrust standing tests by placing civil RICO within title 18. *See* 115 Cong.Rec. 9567 (1969) (remarks of Sen. McClellan). Even assuming that the antitrust laws are an appropriate guide to construing 18 U.S.C. § 1964(c), an assumption which ignores the markedly different purposes behind these two legislative schemes, judicial construction of the antitrust parallel to civil RICO, section four of the Clayton Act, argues *against* the imposition of a "competitive injury" requirement on civil RICO. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (injury to "business or property" under Clayton Act includes non-competitive, "consumer" injury). Finally, it would take a very narrow view of civil RICO's legislative history to contend that Congress, in enacting 18 U.S.C. § 1964(c), was only concerned with the plight of those racketeering victims who were engaged in open business competition with racketeers. Accordingly, this Court joins an increasing number of other courts in holding that there is no "competitive" injury standing requirement applicable to 18 U.S.C. § 1964(c). *Accord, Schact v. Brown*, 711 F.2d 1343 (7th Cir.1983); *Bennett v. Berg*, 685 F.2d 1053, 1059 (8th Cir.1982), *aff'd, en banc*, 710 F.2d 1361 (8th Cir.1983); *Crocker Nat'l Bank v. Rockwell Int'l Corp.*, 555 F.Supp. 47, 49 (N.D.Cal.1982).

■ The defendants have also offered an alternate standing test in furtherance of their motion to dismiss. The defendants assert that plaintiffs must aver a "racketeering enterprise injury" to have standing under 18 U.S.C. 1964(c). The few courts that have referred to the "racketeering enterprise injury" standing requirement have not presented a clear definition of what exactly is a "racketeering enterprise injury." To the extent that the term includes the type of injury which has also gone under the name of "competitive injury" this Court has already determined that 18 U.S.C. § 1964(c) does not require such a showing. Similarly, if the term refers to the status of the defendants as being considered members of "organized crime" then this Court has previously found that argument to be without merit. About the only feature of a "racketeering enterprise injury" that courts have been able to articulate is that a "racketeering enterprise injury" does *not* include the injury due solely to the commission of predicate criminal racketeering acts found in 18 U.S.C. § 1961(1) (1976). Obviously, it is difficult to describe, much less apply, such a standing requirement when all that can be said about it is that there is general agreement on what does not constitute "racketeering enterprise injury." Nevertheless, the Court will attempt to describe what may be meant by the term "racketeering enterprise injury."

Those few courts which have used the term "racketeering enterprise injury" have reached the conclusion that 18 U.S.C. § 1964(c) requires an allegation of this type of injury for two primary reasons. First, some courts have based their conclusions on a general analogy to antitrust law and reason that the general purpose of RICO is served when standing is limited to those injured by conduct Congress intended to proscribe. *See Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206, 208 (E.D.Mich.1981). A second reason for imposing a "racketeering enterprise injury" standing requirement has been found in the "by reason of a violation of section 1962" language contained in 18 U.S.C. § 1964(c).

*See Harper v. New Japan Securities Int'l*, 545 F.Supp. 1002 (C.D.Cal.1982). Despite these two different approaches to standing under 18 U.S.C. § 1964(c), one based on a general reading of RICO and the other on the terms of civil RICO, this Court still has difficulty in articulating what type of injury satisfies either approach.

If "racketeering enterprise injury" merely means that a party has standing only if he has suffered injury from a violation of 18 U.S.C. § 1962, then it adds little or nothing to the terms of the statute itself. References to the general purpose of the RICO statute to support a narrow construction have been explicitly rejected by both the Supreme Court, *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and Congress, *see* 18 U.S.C. § 1961, note (1976). One plausible explanation for the creation of the term "racketeering enterprise injury" might be that the statute should be available only to those victims whose injury can be connected with a confluence of the statutory terms contained in RICO. Perhaps to show a "racketeering enterprise injury" a plaintiff must demonstrate that his business or property injury stemmed from the defendant's racketeering conduct in an enterprise which is specifically prohibited under the terms of 18 U.S.C. § 1962(a), (b), (c), or (d). Again, however, this appears to mean little more than that the plaintiff must allege an injury attributable to a violation of RICO's criminal provisions.

On the other hand the term "racketeering enterprise injury" may imply that the plaintiff must somehow link his injuries to the operations of a criminal "enterprise" within the meaning of 18 U.S.C. § 1961(4) (1976). *See Van Schaik v. Church of Scientology*, 535 F.Supp. 1125 (D.Mass. 1982). This definition of "racketeering enterprise injury", however, cannot be reconciled with prevailing judicial constructions of 18 U.S.C. § 1962. The majority of circuits have interpreted the Supreme Court's decision in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) as affirming the "application of

RICO to situations where the enterprise was, in effect, no more than the sum of the predicate racketeering acts." *United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir. 1983); *see also United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir.1983); *United States v. Bagnariol*, 665 F.2d 877, 890–91 (9th Cir.1981). Accordingly, it would be inconsistent to force a plaintiff to connect his injuries strictly to the offending "enterprise" as opposed to the underlying criminal racketeering acts. Of course, if "racketeering enterprise injury" means business or property injury to *plaintiff's* "enterprise" then it is nothing more than a different name for "competitive injury" which this Court has already rejected.

Having failed to define what the term "racketeering enterprise injury" is supposed to mean, all that remains is the often repeated statement that "racketeering enterprise injury" does *not* include injury attributable only to the underlying criminal predicate acts. This statement is itself somewhat hard to understand. Presumably, any person injured by the activities of racketeers as this group is defined by RICO will suffer direct injury from the actual criminal acts of the racketeers. In fact, Congress intentionally selected a group of criminal offenses as definitive of the type of conduct engaged in by organized criminals. The Eighth Circuit, for example, has singled out the elimination of the underlying pattern of criminal conduct as Congress's primary goal when RICO was enacted. *United States v. Dean*, 647 F.2d 779, 787 (8th Cir.), *on rehearing*, 667 F.2d 729 (8th Cir.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982). As that Circuit stated: "Supporters of RICO legislation, explaining its operation during the Congressional debate, shared the view that the evil to be punished was the pattern of racketeering activities and its injection into legitimate businesses, not the conversion of legitimate enterprises into corrupt ones." *Id.* at 787. By statutory design the victim's compensable injuries from the underlying criminal conduct will frequently be identical to those caused by the racketeering violation. Finally, the

compensatory and deterrent purposes of RICO would be frustrated if a racketeering victim were prohibited from bringing suit on the basis of injuries directly attributable to predicate criminal acts. *See Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 457 (7th Cir.1982) (Civil RICO to be construed in light of its "compensatory and deterrent objectives").

■ In conclusion, the Court is unable to provide a satisfactory definition for the term "racketeering enterprise injury." More importantly, the various reasons that have been proffered for the imposition of this type of a standing requirement are inconsistent with the objectives of the racketeering statute as well as the statutory scheme set forth in 18 U.S.C. § 1962. Hence, the Court will deny the defendants' request to impose a "racketeering enterprise injury" standing requirement on the plaintiffs in this case. This Court is satisfied that plaintiffs, having alleged a compensable injury to their "business or property" by reason of defendants' alleged violation of 18 U.S.C. § 1962, fall within that category of racketeering victims afforded a cause of action under 18 U.S.C. § 1964(c). Of course, the Court does not wish to imply any view on the merits of plaintiffs' case. Rather, this Court merely holds that plaintiffs have alleged sufficient facts in their complaint to prevail over defendants' motion to dismiss for lack of standing.

■ The defendants raise one final argument in favor of dismissal at this early stage. During oral argument defense counsel voiced a general policy argument in favor of dismissing the plaintiffs' section 1964(c) claims even though they may be well-pleaded. Defendants contend that because the plaintiffs have other, more traditional and more specific claims available under District of Columbia law this Court should dismiss the plaintiffs' federal cause of action. The defendants are correct in their assertion that the broad terms of 18 U.S.C. § 1962 & 1964(c) pose a risk of turning traditional state claims into federal cases. The 91st Congress, however, enact-

ed RICO despite persuasive similar arguments by several Congressmen. *See* 116 Cong.Rec. 35,205 (remarks of Rep. Mikva); *see also United States v. Turkette*, 452 U.S. 576, 586–87, 101 S.Ct. 2524, 2530–31, 69 L.Ed.2d 246 (1981) (Congress intended to enter domains traditionally left to the states in enacting RICO). Moreover, the statute itself declares that Congress intended to supplement other available remedies. *See* 18 U.S.C. § 1961, note. Accordingly, this Court will not entertain the defendants' federalism policy argument when it is clear that Congress has already made that judgment. Defendants have also asked this Court to dismiss the complaint because other, more specific causes of action are available to plaintiffs. It is beyond dispute, however, that the plaintiff "is master to decide what law he will rely on ..." *Bell v. Hood*, 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946). A court's discretion in passing on a Rule 12(b)(6) motion to dismiss is limited. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). This Court's authority does not include the discretion to dismiss a complaint because a plaintiff might have brought suit under a different law in another forum which may result in some form of relief. In addition, the Court notes that defendants' argument concerning the availability of more specific causes of action has uniformly been rejected when raised by criminal defendants in RICO proceedings. Courts have denied defendants' argument when viewed as a dual sovereignty challenge, *United States v. Aleman*, 609 F.2d 298, 309 (7th Cir.1979), or as a challenge to the government's charging decision under two overlapping federal criminal statutes, *see United States v. Computer Sciences*, 689 F.2d 1181, 1187 (4th Cir.1982); *cf. United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Although the considerations relevant to judicial review of the government's charging decisions are not equally applicable between private litigants, this Court's review under a Rule 12(b)(6) motion is limited to whether the complaint states a valid cause of action.

Although the Court cannot grant the defendants' motion to dismiss based on the reasons offered by the defendants, the Court is genuinely concerned about the plaintiffs' compliance with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that all fraud allegations "shall be stated with particularity." *Id.* This rule applies with particular force to a civil complaint which alleges fraudulent conduct involving violations of the criminal code. The complaint in this case alleges that the defendants conducted a pattern of racketeering activity, to wit, an alleged scheme to defraud under 18 U.S.C. § 1341 & 1343, "in violation of § 1962." Complaint, ¶ 10. While U.S.C. § 1964(c) literally speaks only to violations of "section 1962," that does not remove the burden placed on plaintiffs to state a specific type of section 1962 violation. For example, paragraph ten of the complaint refers to a conspiracy but the complaint fails to indicate whether a violation of RICO's conspiracy section, 18 U.S.C. § 1962(d) is being alleged. Within the context of Rule 9(b)'s mandate for specificity, it is essential that plaintiffs identify what particular violation of section 1962 is being alleged. Rule 9(b) also extends to the essential elements of the particular type of racketeering violation that is being alleged. Consequently, the plaintiffs must state with particularity the nature of the "enterprise" alleged as well as the acts constituting the basis for the underlying claims of mail and wire fraud. The Court will dismiss the complaint without prejudice to plaintiffs filing an amended complaint in conformity with Rule 9(b) of the Federal Rules of Civil Procedure. Wherefore, it is this 28th day of July, 1983,

ORDERED that the defendants' motion to dismiss is denied in all respects, and it is

FURTHER ORDERED that the complaint is dismissed without prejudice to the refiling of an amended complaint in conformity with Rule 9(b) of the Federal Rules of Civil Procedure within thirty (30) days from the date of this Order.