**PANDICK, INC., Plaintiff,**

v.

**Patrick J. ROONEY, et al., Defendants.**

No. 85 C 6779.

United States District Court,
N.D. Illinois, E.D.

April 16, 1986.

Barry T. McNamara, Arthur Don, Jean Maclean Snyder, D'Ancona & Pflaum, Chicago, Ill., for plaintiff.

Don H. Reuben, James H. Klenk, Barry Ginsberg, Margaret S. Determan, Reuben & Proctor, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DUFF, District Judge.

Defendants move to dismiss the complaint which alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (b) and (d).

### FACTS

It is alleged in the complaint that plaintiff Pandick, Inc., ("Pandick"), which is in the business of supplying financial printing services, competes with defendant Charles P. Young ("CPY") in a national market and with CPY's subsidiary, defendant Charles P. Young, Chicago ("CPY, Chicago") in the Chicago market. It is further alleged that CPY, Chicago has a "dominant share" of the Chicago market.

Defendant Rooney, Pace, Inc. ("Rooney, Pace") is an investment banking firm wholly owned by defendant Rooney, Pace Group, Inc. ("RPG"), a holding company. Defendant Patrick J. Rooney ("Rooney") is director, 26% shareholder, and alleged "controlling person" of RPG.

In 1983, defendants began a struggle for control of defendant Norlin Corporation ("Norlin"), the parent of CPY and CPY, Chicago. Plaintiff alleges that defendants were able to gain control of Norlin, at least in part by misrepresenting to Norlin shareholders and to the Securities and Exchange Commission ("SEC") that Rooney, Pace would be insulated from CPY so that confidential information available to CPY's financial printing business would not be available to defendants' investment business. In April 1985, defendant Patrick J. Rooney became Chairman and Chief Executive Officer of CPY.

Count I alleges that defendants violated 18 U.S.C. § 1962(a) by investing in an enterprise funds obtained through a pattern of racketeering activities. Plaintiff alleges that defendants infused funds gained through racketeering activities into CPY and used CPY to mount a "vicious and systematic campaign of unfair competition against Pandick with the intent to injure Pandick, destroy its business, and frustrate its ability to fairly compete with CPY, especially in the Chicago market." Pursuant to this campaign, defendants misrepresented to CPY employees the legal consequences which would follow if they considered a transfer to Pandick and misrepresented Pandick's ability to meet its contracts.

It is also alleged in Count I that defendants infused into the Norlin enterprises funds obtained from certain predicate racketeering activities that occurred between 1979 and 1984. Plaintiff alleges that during that period, Rooney, Pace sold securities in violation of an order of the Wisconsin Securities and Exchange Commission; was censured by the SEC for stock manipulation; violated federal securities law by trading in the securities of a company in whose stock Rooney, Pace makes a market; and also violated securities law in connection with its underwriting activities. According to the complaint, defendants used the money gained from these acts to fuel their campaign to eliminate Pandick.

Count II alleges that defendants violated 18 U.S.C. § 1962(b), which prohibits the acquisition or maintenance of an enterprise through a pattern of racketeering activities. Plaintiff alleges that defendants acquired control of Norlin through a pattern of racketeering activities which included sending false and misleading proxy materials to Norlin shareholders through the mail. In the course of acquiring Norlin, defendants not only committed mail fraud, but plaintiff also alleges that defendants filed several false statements with the SEC in violation of federal securities law.

### DISCUSSION

In support of its motion to dismiss, defendants argue (1) that there is no causal connection between plaintiff's injuries and defendants' violation of RICO; (2) that

plaintiff has failed to allege at least two predicate acts of racketeering activity; (3) that plaintiff has failed to allege a "pattern" of racketeering activity; (4) that plaintiff has failed to adequately plead conspiracy in Count III; and (5) that plaintiff has failed to plead with the requisite particularity.

### 1. Causation

■ Defendants argue that plaintiff's injuries resulted from unfair competition perpetrated by CPY and not from defendants' securities fraud, mail fraud or acquisition of Norlin. To allow a RICO action only when the plaintiff is the direct victim of the predicate racketeering activities, however, would be to ignore the essence of a RICO violation, which is the commission of racketeering activities in connection with the conduct of an enterprise. *Sedima, S.P. R.L. v. IMREX Co., Inc.,* — U.S. —, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985).

■ Pandick alleges that defendants committed racketeering activities in connection with the conduct of the Norlin enterprises by infusing funds gained from several acts of securities fraud into Norlin and by acquiring and managing Norlin through acts of securities fraud, mail fraud and wire fraud. With their racketeering money and their fraudulently acquired control of CPY, defendants conducted a campaign to eliminate the challenger to CPY's dominant position in the Chicago market for financial printing services. It is alleged that, as a result, Pandick was injured in its business.

■ In *Haroco v. American National Bank & Trust of Chicago,* 747 F.2d 384, 391 (7th Cir.1984), aff'd — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437, the court stated that "a business competitor harmed by infiltration or by other effects of racketeering might well be able to state a claim under RICO by alleging a 'competitive injury'". Plaintiff has alleged a competitive injury resulting from defendants' infiltration of Norlin. It is not necessary for Pandick to allege that it was the target of the predicate fraudulent acts, as long as it was the victim of the dishonest operation

of an enterprise. *Schacht v. Brown,* 711 F.2d 1343, 1359 (7th Cir.1983).

In *Terre Du Lac Association Inc. v. Terre Du Lac, Inc.,* 772 F.2d 467 (8th Cir. 1985), the court sustained a cause of action for indirect injury where the defendant developers committed mail fraud by sending false property reports to persons other than the plaintiffs. The plaintiff property owners were not the direct victims of the mail fraud, but they established a sufficient RICO injury by alleging that their maintenance costs increased because defendants used the funds gained through mail fraud for their own purposes rather than for property improvements.

Similarly, Pandick was not the direct victim of defendants' securities fraud, mail fraud, or wire fraud. Pandick has sufficiently pled causation, however, since it has alleged that its injuries were caused when the benefits of that fraud, the racketeering funds and control of CPY, were used to injure Pandick's ability to compete.

### 2. Predicate Acts

#### A. Count I—Acts of Securities Fraud

Defendants argue that plaintiff has not sufficiently pled securities fraud to establish a racketeering activity in Count I and in particular, that plaintiff has not alleged the requisite criminal intent. Plaintiff responds that racketeering activities may include civil securities fraud, but that in any event the allegations in the complaint do establish the requisite intent.

In support of its argument that RICO applies to civil securities fraud, plaintiff cites cases in which the courts have allowed recovery for "garden variety" fraud. "Garden variety" has been used to describe fraud which has no connection to organized crime when the courts have been responding to the argument that RICO was intended to stop organized crime and was not intended to apply to legitimate business. The Seventh Circuit has stated that with RICO, "Congress deliberately cast the net of liability wide, being more concerned to avoid opening loopholes through which the

minions of organized crime might crawl to freedom than to avoid making garden variety frauds actionable in federal treble damages proceedings—the price of eliminating all possible loopholes." *Sutliffe, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984).

This declination to limit RICO to organized crime does not support the argument that RICO encompasses predicate acts which are merely civil in nature. In *Ray v. Karris*, 780 F.2d 636, 645 (7th Cir.1985), the court stated that "RICO only serves to provide enhanced remedies for certain *criminal* activity carried on in a specified context." (Emphasis added.)

In Count I, plaintiff has set forth a series of acts which are criminal if done "willfully." 15 U.S.C. § 78ff. While Rooney was Chairman and Chief Executive Officer of RPG and Rooney, Pace, it is alleged that Rooney, Pace was censured by the Securities & Exchange Commission for failing to supervise a salesman charged with stock manipulation; that Rooney, Pace violated securities law concerning underwriting activities by improperly allocating shares of stock to customers in certain public offerings; that Rooney, Pace traded in securities of a company in whose stock Rooney, Pace makes a market; and that Rooney, Pace, in connection with its underwriting, illegally extended credit and improperly commingled funds.

■■■ It can reasonably be inferred from the allegations that these securities violations were willful. Willfulness in a securities action may be established by showing that a defendant acted with knowledge of or with reckless indifference to the "improper goings-on" in its firm. *Edward J. Mawod & Co. v. Securities & Exchange Commission*, 591 F.2d 588, 596 (10th Cir. 1978). The allegations in Count I, when taken as a whole, indicate that defendants knew about the securities fraud and ignored its illegality.

While these allegations could be more explicit, they are adequate to give defendants notice of the predicate racketeering activity. To require plaintiff to plead more facts concerning each of the predicate acts would serve no useful purpose and would result in a cumbersome complaint.

**B.** *Count II—Securities Fraud and Mail Fraud*

■■■ Defendants argue that Count II fails to allege that the fraud in the distribution of the proxy materials was fraud in the sale of securities. In *In re Catanella and E.F. Hutton & Co.*, 583 F.Supp. 1388, 1408 (E.D.Pa.1984), the court repeated the often stated test for fraud in connection with the sale of securities—"the connection requirement will be satisfied if the alleged fraud 'touches' the purchase or sale." Plaintiff Pandick has alleged that the settlement agreement was distributed as proxy material with the intent to induce shareholders to agree to defendants' control of Norlin. The inference is clear that the distribution of the proxy material touched upon the defendants' purchase of Norlin shares.

■■■ Defendants also argue that plaintiff has failed to allege sufficient facts to support a predicate act of mail fraud. Defendants state that plaintiff must show (1) the formation of a specific scheme with intent to defraud, and (2) the use of the mails in furtherance of that scheme. Plaintiff alleges that defendants formed a scheme to take over Norlin with the intent to defraud its shareholders and its competitor and also alleges that defendants used the mails in the furtherance of this scheme. Plaintiff has adequately pled mail fraud.

**3.** *Pattern*

Defendants argue that plaintiff has failed to allege a pattern of racketeering activities because the predicate acts alleged in Count I are not sufficiently related, while the allegations in Count II only establish a single act.

In *Sedima, S.P.R.L. v. IMREX Co., Inc.*, — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court reviewed the legislative history of RICO and discussed the "pattern" requirement as follows:

> The target of [RICO] is thus not sporadic activity. The infiltration of legitimate

business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern.

105 S.Ct. 3285 n. 14, quoting S.Rep. No. 91–617, p. 158 (1969).

■ The allegations in Count I satisfy the continuity plus relationship requirement. The securities violations are alleged to have occurred since 1979 and most of the acts occurred in 1983 and 1984. Each of the acts was perpetrated by Rooney and RPG in the conduct of their investment and underwriting business. The proximity in time, the identity of the culprits and the similarity of the alleged securities violations establish a sufficient relationship among the predicate acts in Count I to indicate a "pattern" of racketeering activity. See *United States v. Dean*, 647 F.2d 779, 788 (8th Cir.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982).

■ Defendants state that Count II simply alleges the dissemination of the false settlement agreement, which they argue is a single act. This argument ignores the allegations in Count II that false and misleading proxy materials were mailed to Norlin shareholders and to the SEC, and that fraud was committed in the filing of various statements with the SEC. Each of these mailings and SEC filings, while alleged to have been done with a common purpose, was a separate act. *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985); *United States v. Weatherspoon*, 581 F.2d 595 (7th Cir.1978).

Thus, plaintiff has sufficiently pled a "pattern" of racketeering activity in Count I and Count II.

### 4. *Conspiracy*

Defendants argue that Count III of the complaint should be dismissed because plaintiff cannot establish a cause of action for conspiracy to violate RICO. Defendants assert that a corporation cannot conspire with its officers or with its subsidiaries and therefore, Rooney could not have conspired with any of the corporate defendants of which he is an officer and Norlin could not have conspired with CPY or CPY, Chicago. Defendants cite the rule that there can be no conspiracy between a corporation and its officers or its subsidiaries, which has generally been applied in antitrust cases and rejected in criminal cases.

Defendants rely on *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), which held that a parent corporation could not conspire with its subsidiaries to violate the Sherman Act. The *Copperweld* court stated that an agreement between a corporation and its officers "does not give rise to antitrust dangers" and that an agreement between a parent and a subsidiary does not violate antitrust law because a parent and a subsidiary should be viewed as a single economic unit. Thus, an intracorporate conspiracy would not offend the purposes of antitrust law since such a conspiracy would not affect competition.

■ Such conspiracies can, however, offend the purposes of RICO. Congress intended RICO to be used to block the infiltration of legitimate businesses by organized crime and to separate racketeers from their profits. *Russello v. United States*, 464 U.S. 16, 26–28, 104 S.Ct. 296, 302–03, 78 L.Ed.2d 17 (1983); *Haroco, supra*, 747 F.2d at 392. Intracorporate conspiracies could be used by organized crime to build within a legitimate business enterprise and could also be used to disperse funds acquired through racketeering activities. Therefore, prohibiting intracorporate conspiracies which violate § 1962(a) and (b) would further the legislative purpose of RICO.

■ In *Haroco*, 747 F.2d at 403 n. 22, the court used similar reasoning in finding that *Copperweld* did not preclude a corporation from associating with a wholly owned subsidiary in violation of § 1962(c). The court discussed the holding of *Copperweld* as follows:

That holding does not extend to RICO's provisions in 18 U.S.C. § 1962(c) primarily because the Sherman Act is premised,

as RICO is not, on the basic distinction between concerted and independent action. *Copperweld,* 104 S.Ct. at 2740. The policy considerations discussed in *Copperweld,* 104 S.Ct. at 2740-44, therefore, do not apply to RICO, which is targeted primarily at the profits from patterns of racketeering activity.

Thus, while intracorporate conspiracies are not actionable under the Sherman Act, they may violate RICO.

 In addition to its argument that Count III should fall due to allegations of intracorporate conspiracy, defendants also argue that plaintiff has failed to adequately plead an agreement among the alleged conspirators. In *United States v. Melton,* 689 F.2d 679, 683 (7th Cir.1982), the court stated that the agreement necessary for a conspiracy conviction may be inferred from allegations that defendants committed several acts of racketeering in furtherance of the affairs of the enterprise. Plaintiff sufficiently alleges racketeering activities in the furtherance of defendants' enterprises from which a conspiratorial agreement can be inferred.

#### 5. *Pleading with Particularity*

Defendants finally argue that the complaint should be dismissed under Fed. R.Civ.P. 9(b), which requires fraud to be pled with particularity. Plaintiff has, however, complied with the requirements of Rule 9(b). Plaintiff has described a scheme to defraud and has adequately described defendants' conduct in furtherance of that scheme. Plaintiff has alleged the specific acts which constituted securities fraud and has identified the perpetrators of the acts. The complaint adequately informs the defendants which securities laws are alleged to have been violated and how they were allegedly violated. Plaintiff has also given sufficient detail concerning the acts of wire and mail fraud.

While Rule 9(b) applies to RICO pleadings, so does the liberal, notice-pleading philosophy of the Federal Rules. *Sutliffe, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 653 (7th Cir.1984); *Schacht v.*

*Brown,* 711 F.2d 1343, 1352 (7th Cir.1983). Pandick's complaint satisfies both.

For these reasons, defendants' motion to dismiss the complaint is denied.

IT IS SO ORDERED.