**Peter T. LEWIS, et al., Plaintiffs,**

v.

**Leo Buk LHU, et al., Defendants.**

**Civ. A. No. 87–3473–LFO.**

United States District Court,
District of Columbia.

Sept. 30, 1988.

Edward P. Taptich, Heron, Burchette, Ruckeert & Rothwell, Washington, D.C., for plaintiffs.

Christopher A. Hart, Hart & Chavers, Washington, D.C., for defendant Lhu.

Kevin E. Bass, Walnut Creek, Cal., pro se.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs, Lewis Telecom, Inc., a telecommunications consulting firm, and its president, Peter Lewis, sue two California individuals involved in a competing telecommunications consulting business for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, as well as the common law torts of libel, slander, interference with business relations and prospective advantage, and abuse of process. Plaintiffs' claims arise out of the Federal Communication Commission's procedure for allocating available licenses for cellular mobile radio telecommunications systems.

On January 27, 1988, defendants filed a motion to dismiss, and argument was heard on that motion on March 23, 1988. Following that hearing, counsel filed supplemental memoranda addressing the Commission's primary jurisdiction to hear plaintiffs' claims, the status of the Commission's actions on those claims, and the authority of the Court, if any, to invite the Commission to participate as an *amicus.*

On May 6, 1988, plaintiffs amended their complaint, and defendants filed a motion to dismiss the amended complaint on May 27, 1988. Plaintiffs opposed this motion on June 7, 1988, and a hearing was held on June 17, 1988. Again, both parties filed supplemental memoranda following the hearing. Because the Federal Communications Commission ("FCC") has declined to exercise any primary jurisdiction it might have had over plaintiffs' claims and because the allegations in the amended complaint, taken as true for the purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), do state, with one exception, claims upon which relief can be granted, an Order accompanying this Memorandum will deny defendants' motion to dismiss, except as to the claim for tortious interference with business relations.

### I.

The FCC conducts a random lottery among applicants for cellular mobile radio telecommunications licenses to establish an initial ranking among ten contestants for a given license. The Commission then scrutinizes the applicant who wins the lottery, the "tentative selectee," to determine whether an award of the license to that applicant serves the public interest. To facilitate this evaluation, FCC rules provide the "public," typically the nine other ranked applicants, with an opportunity to comment on the worthiness of the tentative selectee. In practice, the other nine applicants file comments urging the denial of the license to the top-ranked applicant. If the FCC decides to deny that applicant the license, the second-place applicant then becomes the "tentative selectee," and the comment process begins anew.

In an effort to develop their business and reputation as a telecommunications consult-

ing firm, plaintiffs agreed to prepare, at an inordinately low price, the applications for hopefuls in a number of lotteries conducted in November and December of 1986. After the lotteries, in which several of plaintiffs' clients were selected as the tentative selectees, the disappointed applicants filed objections to an FCC grant of the available licenses to these top-ranked applicants on the grounds that the applications prepared by plaintiffs were not *bona fide* and that plaintiff Lewis was an "undisclosed principal" or "real party in interest" behind those applicants.

Plaintiffs claim that defendants, competitors in the telecommunications consulting business, assembled information packets to support challenges to the worthiness of plaintiffs' clients as tentative selectees, which packets were then allegedly sold to disappointed applicants and prospective protestants for as much as $25,000 to $30,000. Plaintiffs contend that, in the course of gathering information for these protest packets, defendants harassed and threatened applicants who were believed to be plaintiffs' clients. Further, plaintiffs charge, defendants' employees misrepresented themselves to those applicants as employees of plaintiffs and used other fictitious identities. Most seriously, plaintiffs allege that defendants or their agents prepared declarations, with forged signatures of applicants who had been assisted by plaintiffs, stating that the original license applications were part of a sham engineered by plaintiffs and their employees. Plaintiffs also contend that defendants prepared sworn statements reporting conversations with plaintiffs' clients, which declarations contained false and misleading statements intended to support allegations that the applications were not *bona fide*. Plaintiffs further claim that several of the disappointed applicants purchased the allegedly fraudulent packets prepared by defendants and submitted them to the FCC to protest grants of licenses to plaintiffs' clients.

Plaintiffs contend that defendants have devised and pursued a scheme to defraud cellular applicants who purchased these packets. Plaintiffs claim that the scheme

was intended to and did in fact defraud the FCC by preparing and selling for submission to the agency the forged declarations to support protests against grants of licenses to the tentative selectees. Moreover, plaintiffs claim, defendants' conduct has injured them by causing delay in the FCC's rejection of the disappointed applicants' protest petitions and by increasing the risk that the FCC will deny the license applications by the tentative selectees who are plaintiffs' clients. Plaintiffs also sue for damage to reputation arising from, among other things, defendants' comments about plaintiffs published in a trade magazine. Plaintiffs claim that defendants are attempting to spread their "smear campaign" against plaintiffs to other applications pending before the FCC.

## II.

Defendant Leo Buk Lhu moves to dismiss on the grounds that the FCC has primary jurisdiction over plaintiffs' claims and that the amended complaint fails to state a claim upon which relief can be granted. Although federal courts should, in some circumstances, stay an action pending resolution of specific issues by an administrative body, the FCC has declined to exercise its primary jurisdiction in this case. In an Order dated May 31, 1988, the Commission stated:

> Lewis' request that issues be specified against the petitioners for alleged abuses in their investigations and for allegedly abusing the Commission's processes is denied. Petitioners' applications are not being considered in this proceeding and, therefore, Lewis' request that issues be specified against the petitioners is not appropriate.... [P]etitioners' applications may never advance to the point of being considered for grant.

Federal Communications Commission, *In re Applications of Jones, et al.*, Order Designating Applications for Hearing and Order to Show Cause (CC Docket No. 88–278) (May 31, 1988) at 12 n. 12. Defendants contend that, in deciding not to consider plaintiffs' allegations of fraud in the application proceedings, "the FCC has effective-

ly concluded that the allegations are not worthy of further action." Defendant Lhu's Response to Plaintiffs' Letter to the Court Dated June 2, 1988 (filed June 27, 1988) at 4. Further, defendants argue, "[i]f the FCC has determined that it is not concerned about fraud against it, then this Court should defer to the FCC's determination thereon." *Id.* at 4–5.

The language of the Commission's Order, however, clearly indicates that it has taken no position on the worthiness of any of plaintiffs' claims of wrongdoing. Rather, the Commission has limited the proceedings to issues related to the qualifications of the tentative selectees. The qualifications of other applicants or other individuals not parties to the FCC proceeding, such as Lhu, are not relevant, as the FCC views it, to the decision whether to award a license to the tentative selectee. Thus, the Commission has declined to exercise any primary jurisdiction it might have had over these claims, and defendants' motion to dismiss cannot be granted on that ground.

■ Defendants' second ground for their motion to dismiss is that the amended complaint fails to state a claim upon which relief can be granted. First, defendants challenge the RICO count on the ground that the amended complaint fails to allege the "racketeering activity" with sufficient specificity. The fraud allegations in the amended complaint, however, identify the nature of the fraud, the individuals who perpetrated the fraud, the approximate time period of the fraud, specific examples of fraudulent documents and false declarations, and the injury that resulted from the fraud. Defendants have sufficient notice of the alleged wrongdoing to satisfy Fed.R. Civ.P. 9(b). Furthermore, plaintiffs have satisfied the standard established in *Slattery v. Costello*, 586 F.Supp. 162, 168 (D.D. C.1983), by averring specific instances of mail and wire fraud, rather than the overly generalized allegation in *Slattery* of acts "in violation of [18 U.S.C.] § 1962."

■ Second, defendants claim that plaintiffs lack standing to bring claims of fraud on behalf of the applicants who obtained defendants' allegedly fraudulent "deny" packets or on behalf of the FCC. However, 18 U.S.C. § 1964 states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...." An allegation that plaintiff was the target of the predicate fraudulent acts is unnecessary. All that is required to sustain standing under RICO is an allegation that plaintiffs' injuries flowed, directly or indirectly, from defendants' fraudulent acts. *See Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467 (8th Cir. 1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986); *Pandick, Inc. v. Rooney*, 632 F.Supp. 1430, 1433 (N.D.Ill. 1986). Plaintiffs' allegations of reputational and other damage stemming from defendants' actions are sufficient to meet this standing requirement.

■ Third, defendants assert that plaintiffs claim no "RICO-type" injury other than a conclusory statement that defendants' campaign to discredit plaintiffs has caused injury to plaintiffs' consulting business. The Supreme Court, however, has explicitly rejected the notion that 18 U.S.C. § 1964 contains a distinct "racketeering injury" requirement. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985).

■ Finally, defendants claim that plaintiffs have not plead facts that would show a causal connection between defendants' campaign of protest against the tentative selectees who were plaintiffs' clients and any injury to plaintiffs' business. Defendants reason that plaintiffs cannot demonstrate that, but for defendants' activities, the FCC would grant the licenses to the applicants. Plaintiffs' amended complaint, however, contains numerous allegations that defendants' racketeering activities have injured plaintiffs' reputation in the telecommunications industry regardless of the outcome of any particular pending application proceedings. Plaintiffs' injuries, while perhaps less direct than the injuries that may be suffered by the tentative selectees who have been challenged based on false documents, are nonetheless cogniza-

ble under RICO. *See Pandick, supra,* 632 F.Supp. at 1433.

With regard to the libel claim, defendants argue that Lhu's statement, "I've already made the allegation that Peter Lewis gave away approximately 9000 applications in the 1986 May 23rd filing," is (1) not libelous, (2) factually correct, and (3) privileged. First, within the telecommunications industry, an allegation that plaintiff was a real party in interest behind thousands of sham applications—a violation of FCC rules—could tend to expose plaintiff to "'scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person.'" *Lewis v. Elliott,* 628 F.Supp. 512, 516 (D.D.C.1986) (quoting D.C. Jury Instruction 17–1). Second, even if it might be technically correct that Lhu had "already made" the allegation about Lewis, repetition of a defamatory statement is itself a publication that the repeater cannot defend on the ground of truth. *See Olinger v. American Savings & Loan Ass'n,* 409 F.2d 142, 144 (D.C.Cir.1969). Finally, the allegedly libelous statement, although related to an ongoing administrative proceeding, was not made *in* that administrative proceeding. Rather, the statement was made in an industry publication and is, therefore, not privileged. *See Lewis v. Elliott,* 628 F.2d at 516–17.

Defendants moved to dismiss the slander cause of action on the same grounds as the libel cause of action. *See* Motion to Dismiss First Amended Complaint (filed May 27, 1988) at 27–28. The reasons stated above as grounds for denying defendants' motion on the libel claim apply identically to the motion on the slander claim.

In support of their motion to dismiss the abuse of process claim, defendants contend that (1) plaintiffs have failed to demonstrate proximate cause, (2) the claim is in the wrong forum, and (3) plaintiffs have not alleged "perversion of process." Although defendant Lhu is not himself a party before the FCC in any of the application proceedings at issue, he can nevertheless, under the set of facts alleged

by plaintiffs, be considered the proximate cause of an abuse of process by his clients against the FCC. The amended complaint alleges that Lhu solicited prospective FCC licensing protestants, that he sold them forged and fraudulent materials, that, as a result of Lhu's advice, his clients filed these materials with the FCC, that Lhu benefitted as a consequence, that plaintiffs were injured, and that the FCC's processes were perverted in the process. *See* First Amended Complaint at ¶¶ 12–21. Although this claim might ideally be heard before the FCC, the Commission, as previously described, has declined to investigate plaintiffs' claim. Even if the Commission did investigate, it is unclear that the Commission would have jurisdiction over a third-party such as Lhu or would have the authority to issue relief capable of redressing plaintiffs' alleged injuries. Finally, defendants' assertions that the FCC's process "is being used precisely for its intended purpose—to determine whether it is in the public interest to grant a [sic] cellular licenses to tentative selectees," Motion to Dismiss First Amended Complaint at 26, must be untrue if plaintiffs' allegations are taken as true, as they must be in a motion under Fed.R.Civ.P. 12(b)(6). Encouraging the submission of forged and fraudulent documents to the FCC is surely a subversion and perversion of the Commission's processes.

As for the claim of interference with business relations, however, defendants' motion to dismiss must be granted. As plaintiffs admit, to recover in the District of Columbia on a claim for interference with business relations, one must show, *inter alia,* a breach of a contract. *See* Opposition to Motion to Dismiss at 14; *Tuxedo Contractors, Inc. v. Swindell-Dressler Co.,* 613 F.2d 1159, 1162 (D.C.Cir. 1979). Although plaintiffs have alleged that defendants *attempted* to procure breaches of contractual relationships between the plaintiffs and several of their clients, the amended complaint does not allege that any one of these contracts was actually breached. Plaintiffs have failed to

state a claim for interference with business relations upon which relief can be granted.

 Finally, defendants challenge plaintiffs request for injunctive relief, arguing that the relief sought is vague and overbroad, that an injunction would infringe upon defendants' constitutional right to petition the government, and that plaintiffs have not alleged irreparable harm for which monetary damages will not suffice. First, plaintiffs have alleged a pattern of fraudulent activity in their amended complaint with sufficient precision and clarity to inform the Court and the defendants of the activity they seek to enjoin. Second, an injunction against encouraging the furnishing of false information to a government agency would not infringe upon defendants' constitutional rights. *Cf. Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1261 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983) ("There is no first amendment protection for furnishing with predatory intent false information to an administrative or adjudicatory body."). Furthermore, with regard to either of these first two grounds, defendants must wait until an actual injunction, if any, is issued by the Court before making any well-founded arguments that the injunctive relief is overbroad or unconstitutional. Finally, defendants cite only *Ashland Oil, Inc. v. Federal Trade Comm'n*, 548 F.2d 977 (D.C.Cir.1976), in arguing that plaintiffs have failed to allege irreparable injury. In *Ashland Oil*, however, the Court of Appeals denied injunctive relief because there was no substantial showing that the injury feared would necessarily occur. The injury, although perhaps irreparable, was not imminent. *See id.* at 979. Here, plaintiffs have alleged a continuing pattern of fraudulent conduct that has caused and, they allege, unless enjoined, will continue to cause irreparable harm to plaintiffs' reputation and business. As alleged in the amended complaint, plaintiffs' claim for injunctive relief is not improper.

Therefore, an Order accompanying this Memorandum will grant defendants' mo-tion to dismiss the first amended complaint as it pertains to the claim for interference with business relations, but will deny the motion as to all other claims.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 30th day of September, 1988, hereby

ORDERED: that defendants' Motion to Dismiss First Amended Complaint should be, and is hereby, GRANTED only as it pertains to plaintiffs' cause of action for interference with business relations and DENIED as to all other causes of action; and it is further

ORDERED: that defendants' Motion to Quash a Notice of Deposition is DENIED as moot; and it is further

ORDERED: that counsel shall attend a status conference in this matter on October 13, 1988, at 9:30 a.m.